# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 03-2174

PALMETTO PROPERTIES, INC. and GREGORY A. SCHIRMER,

*Plaintiffs-Appellees*,

v.

COUNTY OF DUPAGE and JOSEPH E. BIRKETT,

*Defendants-Appellants.*

———————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 99 C 2980—**David H. Coar**, *Judge.*

———————

ARGUED DECEMBER 12, 2003—DECIDED JULY 7, 2004

———————

Before COFFEY, RIPPLE and KANNE, *Circuit Judges.*

KANNE, *Circuit Judge.* This case raises a question about an award of attorney's fees to a "prevailing party" under the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988 (2000). After the underlying claims, which challenged the constitutionality of both state and local adult-entertainment zoning regulations, were disposed of through dismissals, partial summary judgments, a repeal of the relevant portion of the local statute, and a final dismissal for mootness, the district court granted the plaintiffs' motion for attorney's fees. For the following reasons, we affirm.

## I.  Background

The issue on appeal can be succinctly stated: did the district court correctly award attorney's fees to Palmetto as a "prevailing party" under 42 U.S.C. § 1988? However, "prevailing party" is a legal term of art, generally meaning a "party in whose favor a judgment is rendered . . . ." *Buckhannon Bd. & Care Home, Inc. v. W. Vir. Dept. of Health and Human Res.*, 532 U.S. 598, 603 (2001) (quotation omitted). In *Buckhannon*, the Supreme Court demonstrated that, although the issue and definition can be pithily put, in order to determine whether an award of attorney's fees would be appropriate, a meticulous analysis of the "particular judgments and orders entered in a case" is necessary. *McGrath v. Toys "'R" Us, Inc.*, 356 F.3d 246, 253 (2d Cir. 2004). We have done so in the past, *see, e.g., Fed'n of Adver. Indus. Representatives, Inc. v. City of Chicago*, 326 F.3d 924 (7th Cir. 2003) ("*Federation*"), and to do so here, we now review the underlying facts and procedural posture of this case.

Palmetto Properties, Inc. and George Schirmer (collectively, "Palmetto") sought to open an adult entertainment nightclub or cabaret in DuPage County, Illinois. According to County Ordinance section 37-3.2, Palmetto's strip club is classified as an "adult business use" because the employee-dancers expose "specified anatomical areas" and/or engage in "specified sexual activities." DuPage County Ordinance § 37-3.2 (1986).[1] Likewise, the club is an "adult entertain

---

[1]     In relevant part, section 37-3.2 states:

Adult business use. The use of property . . . of which a significant or substantial portion involves an activity distinguished or characterized by its emphasis on matters depicting, describing or relating to Specified Sexual Activities or Specified Anatomical Areas . . . .

* * *

(continued...)

ment facility" under state law 55 Ill. Comp. Stat. 5/5-1097.5 (1998).[2]

While both the state and county regulate the location of these adult businesses, after the state adopted its first such zoning law in 1998, the two regulations differed in material

---

[1] (...continued)
Specified Anatomical Areas:

a. Less than completely or opaquely covered human genitals, pubic region, buttock, anus or female breast below a point immediately above the top of the areola; and

b. Human male genitals in a discernibly turgid state, even if completely or opaquely covered.

Specified Sexual Activities:

a. Human genitals in a state of sexual stimulation or arousal;

b. Acts of human masturbation, sexual intercourse, fellatio or sodomy;

c. Fondling, kissing or other erotic touching of Specified Anatomical Areas;

d. Flagellation or torture in the context of a sexual relationship;

e. Masochism, erotic or sexually oriented torture, beating or the infliction of pain;

f. Erotic touching, fondling or other such contact with an animal by a human   being;

g. Human excretion, urination, menstruation or vaginal or anal irrigation as part of or in connection with any of the activities set forth in "a" through "f" above.

[2] In relevant part, section 5/5-1097.5 states: "For the purposes of this Section, 'adult entertainment facility' means (i) a striptease club or pornographic movie theatre whose business is the commercial sale, dissemination, or distribution of sexually explicit material, shows, or other exhibitions or (ii) adult bookstore or adult video store . . . ."

respects. First, under the law as adopted in 1986, DuPage County required all adult businesses to locate in a zoning district designated "industrial" and banned such establishments from locating within 1000 feet of other adult businesses, or within *500* feet of certain residentially zoned districts or any "church, school, library, park or other publicly operated recreational facility." DuPage County Zoning Ord. § 37-4.16-2 (1986). But the law adopted by the state in 1998 banned all adult businesses from locating "within *1,000* feet of the property boundaries of any school, *day care center, cemetery*, public park, *forest preserve, public housing*, and place of religious worship." 55 Ill. Comp. Stat. 5/5-1097.5 (1998) (emphasis added). Consequently, in December of 1998, after the state adopted its regulation, the County amended its ordinance to (1) add various categories of land use from which adult business must be separated; and (2) increase the required separation distance from 500 to 1000 feet. DuPage County Zoning Ord. § 37-4.16-2 (1998).[3] The County's zoning restriction thereby mirrored the state's.

---

[3]  Ordinance section 37-4.16-2, as amended in 1998, stated:

No adult business use, either as a permitted use or as a conditional use, shall be maintained: (1) within 1,000 feet of the property line of another adult business use; (2) within 1,000 feet of any of the following zoning districts as provided for under this Ordinance: R-1, R-2, R-3, R-4, R-5, R-6, and R-7; (3) within 1,000 feet of a zoned residential district lying within a municipality; or (4) within 1,000 feet of a place of religious worship, day care center, cemetery, public housing, school, library, park, forest preserve or other publicly operated recreational facility. The distances provided for in this section shall be measured by following a straight line without regard to intervening structures, from a point on the property or the land use district boundary line from which the proposed use is to be separated.

Second, the County's 1986 ordinance stated that its purpose was to "eliminate [the] adverse effects" of adult businesses, such as the "blighting or downgrading" of surrounding neighborhoods. DuPage County Zoning Ord. § 37-4.16-1 (1986). In adopting that law, the County relied upon a study conducted by the City of Indianapolis, which had adopted a similar 500-foot separation requirement, and upon a customer-origin survey done by DuPage and Cook Counties. The state statute, however, contained no such statement of policy, nor did its legislative history reveal any studies or reports relied upon by the Illinois General Assembly. And when the County amended its ordinance in 1998 "solely to incorporate [the state law]," no new studies were conducted, nor earlier studies reevaluated, and the statement of policy went unchanged.

The land Palmetto obtained (and partially developed) for the proposed adult business complied with all of the locational limits set out in the County and State regulations, save one. The parcel was 735 feet (i.e, more than 500, but less than 1000 feet) from the boundary of Pratt's Wayne Woods Forest Preserve, much of which is not accessible to the public.[4] As a result, Palmetto feared that the County and/or State would prevent the nightclub's opening based upon the 1000-foot forest preservation separation requirement. Palmetto sued DuPage County, the Forest Preserve District of DuPage County, Joseph E. Birkett (in his official capacity as DuPage County State's Attorney), and Jim E. Ryan (in his official capacity as Illinois Attorney General),

---

[4] We note that in its first complaint, filed on May 5, 1999, Palmetto apparently did not realize that the relevant parcel was within 1000 feet of a forest preserve and asserted that the parcel complied with all the state and local zoning limitations. Thus, Palmetto argued only that the ordinances were unconstitutional on their face. Eventually, Palmetto realized its mistake and amended its complaint—twice.

arguing that the state and local laws were violations of the First and Fourteenth Amendments. Specifically, in its third amended complaint, Palmetto alleged that: (1) the 1000-foot forest preserve separation requirement, under either law, was facially unconstitutional because it was unsupported by a substantial governmental interest; (2) the forest preserve separation requirement, under either law, was unconstitutional as applied to Palmetto; and (3) both laws were facially unconstitutional in toto because they effected a complete ban of protected speech in DuPage County.[5]

Between February of 2000 and March of 2001, the district court was inundated with a flurry of motions to dismiss, summary-judgment motions, responsive pleadings, and competing fact statements, resulting in a total of at least thirty-four filings. Early in the course of the proceedings, however, Illinois Attorney General Ryan was dismissed from the suit because Palmetto failed to overcome the presumption of Ryan's Eleventh Amendment immunity. This determination was not appealed.

---

[5] An additional constitutional challenge was also raised. Palmetto's property was zoned as a "Light Industrial District," designated I-1. However, adult business uses may locate as of right only in "Heavy Industrial Districts," designated I-2. Hence, Palmetto, in order to open the proposed club, needed a special or conditional zoning use permit from the County. *See* DuPage County Zoning Ord. §§ 37.14.13 *et seq.* (1998) (laying out the application procedure). But such permits may be granted only if the applicant complies with all zoning restrictions, other than the designation. *See id.* As a result, Palmetto could not obtain a permit because less than 1000 feet separated the relevant parcel from the forest preserve. Palmetto, therefore, also challenged the ordinances regarding special or conditional use permits as unconstitutional prior restraints of protected speech. Because the district court never reached the merits of this issue, *see infra* note 7, it is largely tangential to the instant appeal.

Finally, on March 29, 2001, the district court issued its order, which sorted through myriad summary-judgment issues. First, the Forest Preserve District's motion for summary judgment was granted "because the District has no connection to the enforcement of the DuPage Ordinance or the Illinois Statute and there is no District ordinance or policy at issue here." Second, the court found that because Palmetto's claims were "rooted in the First Amendment," Palmetto was entitled to "rely on the impact of the ordinance[s] on the expressive activities of others as well as [its] own," and hence, the case was ripe for adjudication. Third, State's Attorney Birkett's Eleventh Amendment immunity barred Palmetto's suit with respect to the state law, but not with respect to the County Ordinance.[6] Therefore, only the County of DuPage and Birkett (only with respect to the County ordinance) remained as defendants (hereinafter collectively "Defendants" or "County").

Reaching the merits, the district court held that: (1) the state and local zoning forest preserve separation requirements were neither supported by a significant government interest nor narrowly tailored because neither entity presented any evidence or prior case law to demonstrate that strip clubs negatively impact areas of forest preserves not open to the public; and (2) both restrictions failed to leave open reasonable alternative means of communication. Uncertain as to whether the district court struck down the entirety of the County Ordinance or simply the forest pre-

---

[6] Because the district court applied Eleventh Amendment immunity to protect both Attorney General Ryan and State's Attorney Birkett from the claims challenging the state law, *see, e.g., Edelman v. Jordan*, 415 U.S. 651 (1974), it appears that no challenge to the state ordinance remained. Indeed, although the district court's March 29, 2001 order discussed the merits of both the state and local statutes, in its subsequent clarifying order, the district court specifically addressed only the County ordinance.

serve segment, Defendants asked the district court to clarify its judgment. The court did so on April 26, 2001 and specifically declared only the portion of Ordinance section 37-4.16.2 referring to "forest preserves" unconstitutional.[7]

Presumably wanting to avoid further litigation, the Defendants informed the district court and Palmetto that, instead of appealing, the offending provision of the ordinance would be amended or repealed. Hence, while the County pursued such action, the district court continued the case in lieu of entering a final order to officially close the action. As promised, the forest preserve separation requirement was repealed.[8] Palmetto was therefore free to operate its proposed nightclub. Following its opening, the district court dismissed the lawsuit as moot on January 3, 2002.

Palmetto then petitioned for an award of attorney's fees from the Defendants as a "prevailing party" under 42 U.S.C. § 1988. While there was no dispute as to the amount claimed, the Defendants adamantly argued that Palmetto was not a prevailing party. The district court disagreed. After carefully analyzing *Buckhannon* and noting that Palmetto did not request fees related to claims never addressed on the merits, *see supra* notes 5 and 7, the district court awarded $49,175.00 to Palmetto. This appeal resulted and, for the following reasons, we affirm the district court's award.

---

[7] Having found the forest preserve restriction unconstitutional, the court also determined that it need not reach the prior restraint claim. *See supra* note 5.

[8] The County actually adopted new restrictions, which differentiated between "active" and "passive" recreational areas, which include forest preserves. But the amended ordinance requires only a 500-foot separation between an adult business and "passive recreational areas." (R. 100.) Hence, the statute no longer posed any bar to Palmetto's strip club.

## II.  Analysis

### A.  Standard of Review

Under 42 U.S.C. § 1988 a "prevailing party" is entitled to "a reasonable attorney's fee." When analyzing a district court's grant or denial of such fees, we review de novo the lower court's purely legal conclusions. *Federation*, 326 F.3d at 932. But factual matters underlying the fee award, such as the fee amount and a party's ultimate litigation goals, are reviewed for clear error. *Cady v. City of Chicago*, 43 F.3d 326, 329 (7th Cir. 1994). Because the County challenges only whether the district court inappropriately extended the definition of a "prevailing party," our review here is de novo.

### B.  *Buckhannon* and Its Progeny

In *Buckhannon*, the Supreme Court interpreted "prevailing party" under the fee-shifting provision of the Fair Housing Amendments Act of 1988 ("FHAA"), 42 U.S.C. § 3613(c)(2). Because nearly all federal fee-shifting provisions use this term of art, *see, e.g.*, 42 U.S.C. §§ 1988, 12205, the *Buckhannon* Court encouraged consistent interpretation, when possible, across the federal statutes. *See* 532 U.S. at 602-03. Although we have not gone so far as to hold that *Buckhannon* applies to all fee-shifting statutes, we have held that it is conclusively presumed to so apply absent a clearly contrary indication in the "text, structure, or legislative history of a particular fee-shifting statute . . . ." *T.D. v. LaGrange School Dist. No. 102*, 349 F.3d 469, 475 (7th Cir. 2003) (internal quotations omitted) ("*T.D.*"). Therefore, we followed the strictures of *Buckhannon* in the two cases recently brought before this court which required interpretation of "prevailing party." *T.D.*, *supra*; *Federation*, *supra*. In *Federation*, we expressly held that it is "abundantly clear" that *Buckhannon* applies to the term as used

in 42 U.S.C. § 1988. *Federation*, 326 F.3d at 932 n.8. In short, whether Palmetto is entitled to attorney's fees under 42 U.S.C. § 1988 depends upon the application of *Buckhannon*, *T.D.*, and *Federation*.

The Supreme Court in *Buckhannon* upheld a denial of attorney's fees where a defendant "voluntarily" mooted the action. *Buckhannon*, 532 U.S. at 610. A corporation operating assisted-living residences sued the state of West Virginia (and other individual and agency state actors), claiming that a particular provision of a state statute violated the FHAA. *Id.* at 600-01. The state legislature repealed the contested provision, thereby mooting the suit, while discovery was still pending and prior to any substantive judicial determinations. *Id.* at 601. Specifically rejecting the "catalyst theory,"[9] the Court emphasized that a defendant's voluntary change in conduct, "although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur* on the change." *Id.* at 605 (emphasis in original). The Court also discounted arguments about defendants' incentives to avoid fees, noting that such considerations were too speculative and thus unhelpful because, depending on the case, a defendant's fear of fees may or may not be as significant as its fear of monetary damages, if liable. *Id.* at 608. Finally, the Court stated that if the catalyst theory applied, major, yet wholly tangential, litigation would likely result because a district court would need to delve into a "highly factbound" analysis of a defendant's subjective motivations

---

[9] Under the catalyst theory, a plaintiff was entitled to attorney's fees as a "prevailing party" so long as (1) the claim was at least colorable, and not groundless; (2) the lawsuit was a substantial rather than insubstantial cause of the defendant's change in conduct; and (3) the defendant's change in conduct was motivated by the plaintiff's threat of victory rather than the threat of expense. 532 U.S. at 610.

in changing its conduct. *Id.* at 609. Thus, the Court held that in order to be a "prevailing party," a litigant must have obtained a judgment on the merits, a consent decree, or some other judicially sanctioned change in the legal relationship of the parties. 532 U.S. at 604-05 (citing *Hanrahan v. Hampton*, 446 U.S. 754, 758 (1980) (per curiam); *Maher v. Gagne*, 448 U.S. 122 (1980); *Texas State Teachers Ass'n v. Garland Independent Sch. Dist.*, 489 U.S. 782, 792 (1989)).

In *T.D.*, the parents of a student suffering from attention deficit disorder claimed that the defendant school district deprived the student of a "free appropriate public education" under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400(d)(1)(A), and appealed to the district court an administrative adjudication which proposed to place the student in a regular classroom, instead of authorizing placement at a private day school. 349 F.3d at 471-73. Specifically, we considered whether the plaintiff was entitled to attorney's fees where cross-motions for summary judgment had been filed, but when the parties negotiated a settlement agreement before any rulings by the district court. In the agreement, the defendant acquiesced to nearly all the plaintiff's demands—placement of the student in a special program in a public school, and reimbursement to the parents for tuition and all costs relating to the student's prior attendance at the day school. 349 F.3d at 473-74. Importantly, the settlement agreement contained no provision regarding attorney's fees. *Id.* at 473. After concluding that *Buckhannon* applies to IDEA, *id.* at 478, we found that while most "private settlement agreements do not entail the judicial approval and oversight involved in consent decrees," some do, in which case a settlement agreement can be the basis for an award of attorney's fees. *Id.* at 478-79 (internal quotation omitted). But in *T.D.*, despite the fact that the district court was actively involved in the settlement negotiations, the agreement (1) was not embodied in a court order or judgment; (2)

did not bear the judge's signature; and (3) did not give the district court continuing jurisdiction to enforce the agreement. *Id.* at 479. *See also Toms v. Taft*, 338 F.3d 519, 529 (6th Cir. 2001) (holding that a court-sponsored settlement conference was insufficient to make the plaintiff a prevailing party). Hence, we concluded that it was "merely a private settlement agreement between the parties," lacking the judicial imprimatur necessary to convey "prevailing party" status. *Id.*

In *Federation*, an advertising trade association sued the City of Chicago, alleging that an ordinance prohibiting the placement of alcohol and cigarette advertisements on billboards, sides of buildings, and freestanding signboards violated the First Amendment and was preempted by federal and state statutes. 326 F.3d at 927. In 1988, the trade association moved for summary judgment on both the First Amendment and preemption claims. Although no ruling was made on the First Amendment claims, the district court held that all portions of the ordinance relating to cigarette advertising were preempted by federal law and that the portions relating to alcohol were not severable. *Id.* The City appealed the preemption determination, and we reversed in large part, finding that (1) only a tiny provision of the ordinance was preempted by federal law; and (2) the ordinance was severable. *Fed'n of Adver. Indus. Representatives, Inc. v. City of Chicago*, 189 F.3d 633, 639-40 (7th Cir. 1999).

Subsequently, the City amended the ordinance to remove the preempted portion and other provisions, the constitutionality of which had been seriously called into question by *Greater New Orleans Broadcasting Ass'n v. United States*, 527 U.S. 173 (1999). 326 F.3d at 928.

The trade association then amended its complaint to drop the preemption claim and to entirely eliminate its challenge to the cigarette-advertising portions of the ordinance. *Id.* In

2001, the association again moved for summary judgment on its remaining First Amendment claims. But before the City filed its response, the Supreme Court decided *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525 (2001), which held that a statute similar to the challenged ordinance was preempted by federal law. *Id.* The City then filed a cross-motion to dismiss based upon mootness, indicating that although the City believed its statute was materially different from the *Lorillard* ordinance, the risks of going forward in light of *Lorillard* had persuaded it to repeal the ordinance. *Id.* The City did indeed repeal the ordinance, and the district court then dismissed the case and denied the trade association's request for attorney's fees under 42 U.S.C. § 1988. *Id.*

Upon appeal of the district court's denial of fees, we analyzed exactly what, if any, "judicially sanctioned change" in the legal relationship of the parties the trade association had achieved. First, we pointed out that while the district court originally granted its motion for summary judgment on preemption grounds, we reversed the "core holding" of that decision. Simply because "we affirmed [a tiny] portion of the original district court decision certainly does not make [the trade association] a prevailing party," particularly when our holding provided the association no relief at all. 326 F.3d at 933.

Second, we assumed, *arguendo*, that the City's repeal of the statute was "not voluntary," instead compelled by the combination of the Supreme Court's decision in *Lorillard* and the association's motion for summary judgment. However, because neither the City nor the trade association were parties to that case, we concluded that there was "[no] judgment that changed the legal relationship between the parties in *this* case," *id.* (emphasis in original), and we affirmed the district court's denial of attorney's fees.

### C.  Attorney's Fees for Palmetto

The facts of this case are essentially undisputed. The district court granted Palmetto a partial summary judgment, striking down as unconstitutional the portion of the County adult-entertainment zoning ordinance pertaining to forest preserves—the only provision which effectively prevented Palmetto from operating its nightclub. The County, after presumably concluding that its odds of success on appeal were limited, assured the district court and Palmetto that it would repeal the offending provision. Thus, the district court continued the case to give the County a sufficient amount of time to correct its error. As promised, the ordinance was repealed and the case was dismissed as moot.

The County now contends that Palmetto is not entitled to an award of attorney's fees because "the partial summary judgment pertaining to the forest preserve provisions in the County Ordinance never became final or enforceable before the case was dismissed for mootness." We disagree. It would defy reason and contradict the definition of "prevailing party" under *Buckhannon* and our subsequent precedent to hold that simply because the district court abstained from entering a final order formally closing the case—a result of the Defendant's assertions that it would repeal the challenged portion of the ordinance—Palmetto somehow did not obtain a "judicially sanctioned change" in the parties' legal relationship.

In *Buckhannon*, the challenged state law was repealed, thereby mooting the case, *before* the district court made *any* substantive rulings. Thus, the *Buckhannon* Court construed the change in the defendants' conduct as *voluntary*, lacking the necessary judicial imprimatur. In this case, not only did the district court make a substantive determination as to essentially all the constitutional claims save one, *see supra* notes 5 and 7, the County repealed the ordinance only *after*

that determination had been made and presumably *because of it*. To be sure, the Defendants were free to moot the case *before* the summary-judgment ruling, in which case the action would have been voluntary. They did not. Hence, their action is most persuasively construed as involuntary—indeed exhibiting judicial imprimatur.

Furthermore, while the *Buckhannon* Court dismissed concerns about "mischievous defendants" (i.e., those who moot a case to avoid an award of attorney's fees), the qualifications placed upon those remarks apply in this case:

> [P]etitioners' fear of mischievous defendants only materializes in *claims for equitable relief,* for so long as the plaintiff has a cause of action for damages, a defendant's change in conduct will not moot the case. Even then, it is not clear how often courts will find a case mooted: "It is well settled that *a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice*" unless it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000).

*Buckhannon*, 532 U.S. 608-09 (emphasis added) (footnote omitted). Here, Palmetto sought only equitable relief; monetary damages were an impossibility because neither the state nor the County had taken any action to halt or otherwise actionably delay the development of Palmetto's proposed club. Also, and as noted above, the County's "voluntary cessation" of the "challenged practice" (i.e., the forest preserve provision) was done *after* the district court determined its illegality. Indeed, had Palmetto so desired, Palmetto (or the County for that matter) could have pressed the district court to enter a final order closing the case immediately following the court's summary-judgment ruling. Instead, Palmetto graciously—and in reliance upon

Defendants' assurances—waited for the Defendants to amend the regulation and moot the case. In short, reversing the district court's award of attorney's fees in this case would contradict *Buckhannon's* logic, create an inequitable result, and promote inefficiency because plaintiffs who have succeeded on the merits would be encouraged to rush forward with potentially unnecessary litigation, solely to preserve their entitlement to fees.

Nor does our reasoning in *T.D.* mediate in favor of reversing the district court's award of attorney's fees in the instant case. In *T.D.*, the parties entered into a wholly private settlement agreement, whereby the defendant school district agreed to most of the plaintiff's demands. Here, there was no settlement agreement. Instead, Palmetto secured a favorable substantive ruling from the district court, which, in turn, prompted the Defendants to repeal the zoning restriction.

In addition, this case can be distinguished in two ways from the unique situation presented in *Federation*. First, while the *Federation* plaintiffs did initially obtain a favorable judgment on the merits of their preemption claims, on appeal, the lion's share of the district court's ruling was reversed. And the tiny portion of the summary judgment upheld on appeal failed to give the plaintiffs any meaningful relief. We reasoned that a substantially overruled summary judgment, failing to provide relief, could not confer upon the plaintiffs "prevailing party" status.

Second, the city defendants in *Federation* repealed the ordinances at issue because they perceived that a *different* case—namely, the Supreme Court's *Lorillard* decision—cast serious doubt upon their constitutionality. We assumed, arguendo, that the repeal of the challenged statute was therefore involuntary, but nonetheless concluded that an award of attorney's fees was inappropriate. We reasoned that no judgment changed the legal relationship of the parties to the *Federation* lawsuit; a party in one lawsuit

cannot claim to be a "prevailing party" based upon the successes of a party in a different lawsuit. But in this case, Palmetto *itself* obtained a judgment on the merits, which provided the relief sought in the action, and the County chose not to take any steps to pursue an appeal.

Moreover, in *Federation*, we implied that a plaintiff who obtains a favorable summary-judgment ruling, un-challenged by an appeal, would qualify for an award of attorney's fees under *Buckhannon* and 42 U.S.C. § 1988:

> Nor does the fact that [the plaintiff] had a summary judgment motion pending provide the necessary ju-dicially sanctioned change. Even assuming that after *Lorillard*, the district court would have granted [the plaintiff's] motion had the [defendant] City not repealed its ordinance, the fact remains that no such ruling was made and thus no judicial relief was awarded to Feder-ation.

326 F.3d at 933. Our *Federation* decision, which assessed the procedural posture of that case, supports the district court's grant of attorney's fees in the instant case.

We lastly note that the County's argument is unavailing not only because it contradicts *Buckhannon*, *T.D.*, and *Federation*, but also because it values form over substance. Nowhere does the County posit that the district court's summary-judgment rulings wouldn't have been appealable had the district court simply entered a final order formally closing the case. And the only reason the court did not do so was because the County requested a continuance so that it could moot the case. The summary-judgment orders changed the legal relationship of the parties because, for example, had Palmetto grown impatient with the time it took the County to repeal the offending zoning provision, Palmetto could have requested that the district court close the case and then sued to enforce the judgment. Nor does the County argue that the district court, in making its

summary-judgment determination, failed to evaluate the evidence presented by both parties or failed to apply the appropriate constitutional law to the facts of the case. It would fly in the face of legal intuit to conclude that the district court's partial grant of a summary judgment would not constitute a "judgment on the merits" adequate to confer "prevailing party" status upon Palmetto, simply be- cause—at the County's behest—the district court delayed in entering a final order to close the case.

### III.  Conclusion

In sum, the district court's $49,175.00 award of attorney's fees to Palmetto was equitable, efficiency-promoting, a logical development in *Buckhannon* jurisprudence, and applied a common-sense understanding of a "judgment on the merits." For the foregoing reasons, we AFFIRM the award of attorney's fees under 42 U.S.C. § 1988.

A true Copy:

      Teste:

                            _____

                            *Clerk of the United States Court of*
                                *Appeals for the Seventh Circuit*