In the

# United States Court of Appeals
## For the Seventh Circuit
_____

Nos. 07-2899 & 07-2913

BRUCE ZESSAR,

*Plaintiff-Appellee*,

*v.*

JOHN R. KEITH, ET AL.,

*Defendants-Appellants.*

_____

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 05 C 1917—**David H. Coar**, *Judge.*

_____

ARGUED APRIL 3, 2008—DECIDED AUGUST 6, 2008

_____

Before FLAUM, MANION, and TINDER, *Circuit Judges.*

MANION, *Circuit Judge.* After his absentee ballot was rejected in the 2004 general election, Bruce Zessar filed suit alleging that his due process rights were violated because election officials failed to provide him with notice and a hearing prior to rejecting his ballot. The district court granted in part his motion for summary judgment, but before it entered final judgment, the Illinois General Assembly amended the portions of the state's Election Code addressing absentee voting. Notwithstanding this amendment, the district court entered final judgment in favor of Zessar declaring unconstitutional the

Code as it stood prior to amendment. The district court
also deemed Zessar a prevailing party entitled to attorney's
fees under 42 U.S.C. § 1988. The defendants appeal.
Because we conclude that the amendment of the Election
Code mooted Zessar's challenge to the pre-amendment
Code, and that the district court's conclusion that Zessar
was a prevailing party was in error, we vacate those
portions of the judgment and remand for partial dismissal.

I.

Bruce Zessar resides and is registered to vote in Lake
County, Illinois. Zessar submitted an absentee ballot
intending to vote absentee in the general election held
on November 2, 2004. His ballot was rejected because of a
belief that the signatures on his absentee ballot applica-
tion and ballot envelope did not match. Election officials
concede that Zessar's vote was rejected in error, and did
not count in the election. Making matters worse, Zessar
was not notified that his ballot had been rejected until he
received a postcard explaining the basis for the rejection
in mid-January 2005. The parties agree that during the
period between election day and the canvass, which
was held on November 17, 2004, and rendered the elec-
tion results final, Zessar had no opportunity to challenge
the rejection or otherwise rehabilitate his ballot.

The circumstances surrounding the rejection of Zessar's
ballot arose under Article Nineteen of the Illinois Election
Code, which covers absentee voting, as it stood in 2004. 10
ILCS 5/19-1 to 5/19-15 (2004). Voters began the process
of voting absentee by filing an application with local
election authorities for an absentee ballot. 10 ILCS 5/19-2
(2004). If the applicant was lawfully entitled to vote

absentee in the requested location, election officials mailed the applicant a ballot. 10 ILCS 5/19-4 (2004). A voter who received an absentee ballot would fill it out, place it in a certified envelope, and either mail it to the clerk's office or deliver it in person. The clerk would then see that all such ballots were delivered to the appropriate precincts. 10 ILCS 5/19-8 (2004). Absentee ballots were not counted or otherwise verified before the evening of election day. On election day, however, the absentee ballot count began no later than 8:00 p.m. *Id.* Once the polls closed, election judges in each precinct cast the absentee ballots by opening the carrier envelopes containing the ballots, announcing each voter's name, and comparing the signature on the ballot envelope with that on the application. 10 ILCS 5/19-9 (2004). A ballot would be rejected in four circumstances: (1) if the signatures on the envelope and application did not match; (2) if the voter was not registered in the precinct; (3) if the envelope was open, or had been opened and resealed; or (4) if the voter voted in person during the day. *Id.* While the Election Code in effect in 2004 required notification to absentee voters whose ballots were rejected, 10 ILCS 5/19-10 (2004), there was no requirement that the voters be notified in time to challenge the rejection before the canvass. In other words, sending Zessar notice in January 2005 that his ballot was rejected at the beginning of November 2004 violated no portion of the Illinois Election Code.

Zessar filed a class action complaint on behalf of himself and all other similarly situated voters against Willard R. Helander, Lake County Clerk, the members of the Lake County Board ("Helander," collectively), and the members of the Illinois State Board of Elections ("State Board"). Zessar alleged that the Election Code's failure to

provide for notice and a hearing before the rejection of his absentee ballot violated his due process rights as protected by the Fourteenth Amendment to the United States Constitution.[1] On March 13, 2006, the district court entered an order denying the defendants' motion for summary judgment and granting, in part, Zessar's motion for summary judgment. The court determined that the Election Code's failure to provide for notice and a hearing violated the Due Process Clause, and that Zessar was entitled to prospective injunctive relief. The court also held that the economic damages Zessar sought were not an appropriate remedy, and that any equitable relief beyond implementing a lawful absentee voting system was not warranted. The district court did not enter judgment on its ruling, however, instead directing the parties to file proposed procedures for providing notice and a pre-deprivation hearing to voters whose absentee ballots were rejected.

Three days later, Zessar filed an emergency motion for an injunction asking the district court to enjoin enforcement of the unconstitutional portions of the Election Code in the Illinois primary elections which were going to take place on March 21, 2006. For reasons not appearing in the record before us, that motion was denied on March 20, 2006. The district court also denied motions by the State Board and

---

[1] The district court certified both a plaintiffs' class, made up of Illinois registered voters whose submitted absentee ballots were rejected prior to the canvass without notice and a hearing, and a defendants' class, made up of all Illinois county election officials operating under the authority of the Illinois Election Code. For ease of discussion, we will refer to Zessar, the class representative, when speaking of the plaintiffs' class.

Helander to file interlocutory appeals of the ruling on the summary judgment motion.

While the parties' proposed procedures for handling absentee balloting were under consideration by the district court, the Illinois General Assembly passed Public Act 94-1000 ("Act") amending provisions of the Election Code such as the procedure for selecting election judges, 10 ILCS 5/13-1 (2006), handling challenges at polling places, 10 ILCS 5/18-5 (2006), and counting provisional ballots, 10 ILCS 5/18A-15 (2006). *See* Ill. Public Act 94-1000, § 5 (2006). More significantly for this case, the Act also amended the procedures for absentee voting. The amendments, which took effect on July 3, 2006, provided that if a mail-in absentee ballot was rejected for one of the reasons stated above, the election authority had to notify the voter of the rejection "within 2 days after the rejection but in all cases before the close of the period of counting provisional ballots." 10 ILCS 5/19-8(g-5) (2006). This notice had to state the reason for the rejection, and notify the voter that he could appear before the election authority on or before the fourteenth day after the election to show cause why the ballot should not be rejected. *Id.* Review of the voter's challenge would be undertaken by a panel of three judges appointed for that purpose. *Id.* The judges could review the contested ballots, envelopes, applications, and any other evidence submitted by the voter. *Id.* The final determination on a ballot's validity was not reviewable, and ballots determined to be valid were added to the vote tally for their precincts. *Id.*

The defendants moved to dismiss Zessar's suit as moot based upon these amendments. Zessar opposed dismissal, and argued that the amendments did not moot the suit because they still did not provide sufficient due

process to absentee voters. The district court denied the motion on October 10, 2006. In denying the motion, it expressed concern regarding absentee voters who would be absent from their precincts for an extended period of time, due to overseas deployment or otherwise, because they would be unable to appear in person before the three-judge panel. The court was also concerned that local election officials might not be prepared to implement the three-judge panels. On October 20, 2006, in anticipation of the upcoming election and echoing the concerns expressed by the district court, Zessar moved for an emergency injunction prohibiting the defendants from rejecting any absentee ballots under the Election Code as it then stood. This motion was denied by the district court on October 26, 2006.

On June 11, 2007, the district court entered a final judgment containing four conclusions. First, the district court stated that "[t]he prior version of 10 ILCS 5/19-8 is unconstitutional because it failed to provide due process to the absentee voter." Second, the court concluded that Zessar qualified as a prevailing party based on its earlier partial grant of Zessar's motion for summary judgment and the Illinois General Assembly's subsequent amendment of the Election Code. Next, the court cited statistics from the 2006 election showing the large number of challenges brought by absentee voters whose ballots were rejected and the high rate of success they had in challenging rejection. Even though the court still entertained reservations about the sufficiency of the protections afforded to voters absent from their precincts for extended periods, the statistics did not reveal that any such voter attempted to challenge a ballot rejection. Accordingly, the court expressly declined to enter judgment that the post-amendment Election Code was uncon-

stitutional. Finally, the court declined to enter judgment that election officials were required to use every available address (i.e., mail, email, and fax) to notify voters that their absentee ballot had been rejected, leaving to local election officials the determination of reasonable notification. The defendants filed motions for reconsideration of the court's determination that Zessar was a prevailing party, but the district court denied those motions.

Helander and the State Board filed separate appeals which have been consolidated for our review. Helander challenges the district court's substantive determination that the pre-amendment Election Code violated the Due Process Clause. The State Board argues that Zessar's challenge to the Election Code as it stood prior to its amendment in July 2006 was mooted by the Code's amendment. This mootness, the State Board argues, left the district court without jurisdiction to enter final judgment on the constitutionality of the pre-amendment provisions. Additionally, the State Board asserts that Zessar is not a prevailing party under 42 U.S.C. § 1988, and that the district court erred in declaring him such and awarding him attorney's fees. The district court's conclusions regarding the post-amendment Election Code have not been presented to us for review.

## II.

It is fundamental to the exercise of judicial power under Article III of the United States Constitution that "federal courts may not give opinions upon moot questions or abstract propositions." *Protestant Mem'l Med. Ctr., Inc. v. Maram*, 471 F.3d 724, 729 (7th Cir. 2006). Therefore, we must consider whether Zessar's due process challenge to

the pre-amendment Election Code was rendered moot by the Code's amendment before taking up the issue of whether those provisions comported with constitutional due process requirements. *Id.* ("Mootness is one of the concepts that comprise the threshold issue of justiciability.") "Whether a case has been rendered moot is a question of law that we review de novo." *Fed'n of Adver. Indus. Representatives, Inc. v. City of Chicago*, 326 F.3d 924, 928-29 (7th Cir. 2003).

We have previously held that any dispute over the constitutionality of a statute becomes moot if a new statute is enacted in its place during the pendency of the litigation, and the plaintiff seeks only prospective relief.[2] *See MacDonald v. City of Chicago*, 243 F.3d 1021, 1025 (7th Cir. 2001) (citing *Kremens v. Bartley*, 431 U.S. 119, 129 (1977) ("[T]he enactment of the new statute clearly moots the claims of the named appellees.")); *see also Rembert v. Sheahan*, 62 F.3d 937, 940 (7th Cir. 1995) ("When a challenged statute is repealed or significantly amended pending review, *and a plaintiff seeks only prospective relief*, a question of mootness arises.") (emphasis added). Thus, absent a lack of genuineness to the amendment as addressed below, the enactment of Public Act 94-1000 mooted the parties' dispute over the pre-amendment Election Code. In fact, that the dispute was moot seems to have been

---

[2] Zessar sought damages in his complaint, and if that claim was still pending it would have left alive the question of his entitlement to damages based on enforcement of the pre-amendment Code. However, the district court denied all relief other than "implementing a constitutional absentee voting system" when it granted in part Zessar's motion for summary judgment. Zessar did not appeal that decision.

apparent to the parties and the district court during the proceedings below. Once the Code was amended in July 2006, the parties' motion practice turned to the constitutionality of the post-amendment Code. Similarly, the district court's denial of the defendants' motion to dismiss for mootness was based on its concerns about the constitutionality of the new provisions and whether election officials were actually going to implement them. The parties' concern with the Election Code as it stood when the suit was filed ceased until the district court entered judgment declaring that version of the Code unconstitutional.

What was true during the litigation below remains true on appeal. "[The] case-or-controversy requirement subsists through all stages of federal proceedings, trial and appellate." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 474, 477 (1990). Another way to state the justiciability principles set forth above is that "Article III denies federal courts the power to decide questions that cannot affect the rights of the litigants in the case before them." *Id.* If we were convinced by Helander that the district court erred in concluding that the pre-amendment Code was constitutionally infirm, what relief could we afford the defendants? It is not as though we could order future elections to be carried out according to procedures the Illinois General Assembly amended in July 2006. Similarly, what benefit would Zessar gain by prevailing on his argument that the district court was correct? The parties' rights and obligations remain governed by the post-amendment Code regardless of our opinion about the constitutionality of provisions that ceased to have effect more than two years ago.

There is an exception to the rule that legislative correction of a challenged statute moots a challenge to the

statute as it stood prior to amendment. Amendment or repeal of a challenged statute "'does not deprive a federal court of its power to determine the legality of the practice' unless it is 'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Buckhannon Bd. and Care Home, Inc. v. W. Va. Dep't of Health and Human Res.*, 532 U.S. 598, 609 (2001) (quoting *Friends of Earth, Inc. v. Laidlaw Envtl. Serv. (TOC), Inc.*, 528 U.S. 167, 189 (2000)). In other words, "when an intervening amendment provides no assurance that the complained-of conduct will cease, the case is not moot." *Rembert*, 62 F.3d at 941. Usually, however, legislative action will provide the assurance required by *Buckhannon*, because "when the defendants are public officials . . . we place greater stock in their acts of self-correction, so long as they appear genuine." *Wis. Right to Life, Inc. v. Schober*, 366 F.3d 485, 492 (7th Cir. 2004).

Zessar argues that his challenge to the pre-amendment Election Code is not moot because there is no assurance that Illinois will not reenact that version of the Code, and because the new provisions retain some of the previous infirmities. However, this case presents neither of the features that normally lead courts to discount the genuineness of an amendment, namely the enactment, or intended enactment, of the same statute, or a statute substantially similar to the one challenged. *See N.E. Fla. Chapter of the Assoc. Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 662 (1993) (concluding that the plaintiffs' challenge was not moot because the challenged statute was amended in insignificant ways and still disadvantaged the plaintiffs); *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 n.11 (1982) (noting that at oral argument the defendant announced its inten-

tion to reenact the challenged provision if the district court's decision was vacated). There is no evidence in the record that the defendants are lying in wait for vacatur of the district court's judgment so that they can reenact the Election Code as it stood prior to July 3, 2006.

Moreover, the amended Code is not substantially similar to the challenged provisions of the pre-amendment Code. The practice challenged by Zessar was the rejection of absentee ballots without notice and a hearing at which voters could challenge that rejection. That practice is remedied under the new version of the code. Zessar may disagree with the extent and sufficiency of the remedy, but the district court concluded that there was no ripe basis for challenging the new version of the Code, and Zessar did not appeal that decision. Because the post-amendment Code is not substantially similar to the provisions Zessar challenged in bringing suit, and there is no indication that the defendants plan to reenact the Code as it stood prior to amendment, Zessar's argument that his challenge to the pre-amendment Code remains live fails. *See Fed'n of Adver. Indus. Representatives*, 326 F.3d at 930 (noting that "repeal of a contested ordinance moots a plaintiff's injunction request, absent evidence that the [defendant] plans to or already has reenacted the challenged law or one substantially similar").

We are cognizant of the resources that were invested, both by the district court and the parties, in litigating and ruling on Zessar's challenge to the pre-amendment Election Code. Those efforts, however, cannot maintain the challenge as a live controversy where it involves a statute no longer in existence and with no indication that the challenged practice will continue. We conclude that Zessar's challenge to the pre-amendment Election Code is

moot. The district court's final judgment should be vacated to the extent that it passes judgment on the pre-amendment Election Code, and that portion of the case below should be dismissed as moot. *Miller v. Benson*, 68 F.3d 163, 165 (7th Cir. 1995) (citing *United States v. Munsingwear, Inc.*, 340 U.S. 36, 39-41 (1950)).

With our conclusion that Zessar's challenge to the pre-amendment Election Code is moot, the only issue remaining on appeal is whether the district court erred in naming Zessar a prevailing party. Courts are authorized to award reasonable attorney's fees to prevailing parties in suits, like this one, brought pursuant to 42 U.S.C. § 1983. 42 U.S.C. § 1988(b). It is well-established that "prevailing party" as used in federal fee-shifting statutes like § 1988 includes only those parties that have achieved a "judicially sanctioned change in the legal relationship of the parties." *Buckhannon*, 532 U.S. at 605. In other words, "to qualify as a prevailing party, a civil rights plaintiff must obtain a least some relief on the merits of his claim." *Farrar v. Hobby*, 506 U.S. 103, 111 (1992). While the district court's decision to award attorney's fees under § 1988 is usually reviewed for abuse of discretion, when that decision rests on the application of a principle of law, our review is de novo. *Fed'n of Adver. Indus. Representatives*, 326 F.3d at 932. We apply the latter standard here because we are presented with the legal question of how broadly to construe the statutory term "prevailing party."

A party is considered prevailing for § 1988 purposes when the court enters final judgment in its favor on some portion of the merits of its claims. *Buckhannon*, 532 U.S. at 605 (citing *Farrar*, 506 U.S. at 113). Settlement agreements will not suffice to render a party prevailing unless they are made enforceable under a consent decree. *Id.* (citing

*Maher v. Gagne*, 448 U.S. 122 (1980)). Resolving a split among the federal courts of appeals, the Supreme Court in *Buckhannon* rejected as a basis for an award of fees the " 'catalyst theory,' which posits that a plaintiff is a 'prevailing party' if it achieves the desired result because the lawsuit brought about a voluntary change in the defendant's conduct." *Id.* at 601. Rather, there must be a "judicial *imprimatur* on the change"; in other words, the judicial act must bring about "a corresponding alteration in the legal relationship of the parties." *Id.* at 605.

The heart of the parties' dispute boils down to whether or not this case is controlled by our application of these principles in *Palmetto Properties, Inc. v. County of DuPage*, 375 F.3d 542 (7th Cir. 2004). The plaintiffs in *Palmetto* sought to open an adult entertainment nightclub. However, there were state and local zoning laws prohibiting operation of such an establishment within 1000 feet of, among other places, forest preserves, and the plaintiffs' proposed site was 735 feet from just such a location. *Palmetto*, 375 F.3d at 544-45. The would-be proprietors sued county officials alleging violations of the First and Fourteenth Amendments. *Id.* at 545. The parties filed motions for summary judgment, and the court issued an order concluding that the forest preserve portions of the zoning laws were constitutionally infirm, and enjoining their enforcement. *Id.* at 546. Instead of entering final judgment, however, the district court continued the case because the defendant informed the court that it did not intend to appeal the court's decision, but would amend or repeal the challenged provision. *Id.* The defendant made good on its promise to repeal the forest preserve portion of the zoning law, and the district court subsequently dismissed the case as moot. *Id.* The court then awarded the

plaintiffs attorney's fees as prevailing parties over the objection of the defendant, and the defendant appealed. We affirmed noting that

> [i]t would defy reason and contradict the definition of "prevailing party" under *Buckhannon* and our subsequent precedent to hold that simply because the district court abstained from entering a final order formally closing the case—a result of the Defendant's assertions that it would repeal the challenged portion of the ordinance—Palmetto somehow did not obtain a "judicially sanctioned change" in the parties' legal relationship.

*Id.* at 549-50.

While this case is distinct from *Palmetto* in a number of ways which we address below, we begin with one obvious way it is similar—after finding a statute unconstitutional, the district court did not enter final judgment before the challenged provision was amended or repealed. This situation gives a plaintiff a hurdle to overcome if he is to show that he is a prevailing party because the Supreme Court has repeatedly held that, other than a settlement made enforceable under a consent decree, a final judgment on the merits is the normative judicial act that creates a prevailing party. *See Sole v. Wyner*, 127 S. Ct. 2188, 2196 (2007) (declining to bestow prevailing party status on a plaintiff whose motion for preliminary injunction was granted but who failed to prevail on the merits); *Buckhannon*, 532 U.S. at 605 (noting that the Supreme Court has "only awarded attorney's fees where the plaintiff has received a judgment on the merits, or obtained a court-ordered consent decree") (citations omitted); *Hewitt v. Helms*, 482 U.S. 755, 758-62 (1987) (concluding on successive appeal that the plaintiff was not a prevailing party

despite a court of appeals holding that his due process rights were violated because the appellate court left it to the district court to fashion relief and the district court determined that the defendants were entitled to qualified immunity).

We did not undercut this final judgment requirement in *Palmetto*, but rather applied it based on the finality surrounding the district court's order granting a motion for summary judgment. There, the court's ruling was succinct and easily enforceable—the forest preserve provision was unconstitutional, and the defendants were enjoined from enforcing it. *Palmetto*, 375 F.3d at 546. Moreover, all parties were in agreement regarding the finality of the court's decision as evidenced by the defendant's statement of its intention not to appeal and its request for a continuance to amend or repeal the stricken provision. Finally, as we noted repeatedly throughout our decision, the district court's forbearance from entering final judgment resulted from the defendant's representation that it was going to repeal the forest preserve provision. *See, e.g., id.* at 549, 550, 551.

Here, the district court's partial grant of summary judgment lacked the finality exhibited in *Palmetto*. Upon entering its decision regarding the constitutionality of the pre-amendment Election Code, the district court directed the parties to submit proposed procedures for providing timely notice and pre-deprivation hearings to absentee voters whose ballots were rejected. There was no way to enforce this grant of partial summary judgment because the defendants were not directed to do, or refrain from doing, anything. *See Farrar*, 506 U.S. at 111-12 (holding that a plaintiff prevails when the relief afforded modifies "the defendant's behavior in a way that directly benefits

the plaintiff"). In fact, Zessar attempted to have the decision enforced when he asked the court to enjoin the defendants from rejecting absentee ballots, without notice and a hearing, in the Illinois primary set to occur on March 21, 2006. The district court denied the motion, and the primary was held under the challenged procedure. Moreover, the defendants here never indicated any intention to implement the findings of the court through amendment, repeal, or otherwise. Instead, they sought leave from the district court to file an interlocutory appeal of its order. The lack of enforceable terms and disputed nature of the district court's partial summary judgment order distinguish it materially from that in *Palmetto*.

Additionally, when the plaintiffs in *Palmetto* prevailed at the summary judgment stage and the defendant repealed the forest preserve provision, the defendant removed "the only provision which effectively prevented [the plaintiffs] from operating [their] nightclub," *Palmetto*, 375 F.3d at 549, leaving the plaintiffs free to move ahead with their plan. *Id.* at 546. Here, Zessar himself did not believe the amendments to the election Code afforded him the relief he sought. He instead challenged the new Code's constitutionality, asking the court to enjoin its enforcement in the 2006 election, and later seeking judgment that the new provisions did not provide sufficient due process.

His dissatisfaction with the amendments notwithstanding, Zessar argues that they qualified him as a prevailing party because they were enacted not only following the district court's partial summary judgment order, but because of it. In support, Zessar points to statements made during the floor debate in the General Assembly that the amendment originated "from clerks across the

state," and "comes from a court case held in Lake County." It is true that the district court's partial summary judgment order likely put the interested parties on notice that a change in absentee voting was coming. However, as we already noted, the defendants had not been ordered to do, or refrain from doing, anything. Rather, at the time the General Assembly enacted Public Act 94-1000, which included other Election Code amendments unrelated to those of Article Nineteen, it was still acting on its own volition in response to the proceedings in the lawsuit. *See Buckhannon*, 532 U.S. at 605 ("A defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur* on the change.").

In sum, our decision in *Palmetto* should be read in conjunction with the principles set forth by the Supreme Court and our prior cases for determining when a plaintiff is a prevailing party for the purpose of awarding attorney's fees under § 1988. Normally, such a determination will require a final judgment on the merits or a consent decree. *Id.* Cases will sometimes arise where, despite there being no final judgment or consent decree, the legal relationship of the parties will be changed due to a defendant's change in conduct brought about by a judicial act exhibiting sufficient finality. *Palmetto* was such a case. This is not, and we therefore reverse the district court's determination that Zessar was a prevailing party entitled to attorney's fees under § 1988.

### III.

We conclude that the amendment of the Illinois Election Code by the Illinois General Assembly in Public Act 94-

1000 mooted Zessar's challenge to the Code as it stood prior to the amendment. There is nothing in the record indicating that the amendment was not genuine, nor that the defendants intended to return to the challenged practice. Additionally, we conclude that Zessar did not achieve a judicially sanctioned change in his legal relationship with the defendants, and that the amendment of the Election Code was a multi-faceted change initiated by the General Assembly partially in response to Zessar's lawsuit. Accordingly, the district court's judgment is VACATED to the extent it passed on the constitutionality of the Illinois Election Code as it stood prior to July 3, 2006, and to the extent it declares Zessar a prevailing party entitled to fees under 42 U.S.C. § 1988. We REMAND with instructions to dismiss Zessar's challenge to the pre-amendment Election Code as moot.