WATERMAN STEAMSHIP CORPORATION

v.

MARITIME SUBSIDY BOARD, et al., Appellants.

FARRELL LINES, INCORPORATED

v.

James H. BURNLEY, IV, et al., Appellants.

Nos. 88–5392, 88–5393.

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 7, 1989.

Decided April 20, 1990.

Edith S. Marshall, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John D. Bates, R. Craig Lawrence and Michael J. Ryan, Asst. U.S. Atty., were on the brief, for appellants in No. 88–5392 and No. 88–5393. Wilma A. Lewis, Asst. U.S. Atty., Washington, D.C., also entered an appearance for appellants in both cases.

Edward Aptaker, with whom Edward Schmeltzer and Deana Frances Dudley, Washington, D.C., were on the brief, for appellee Farrell Lines, Inc. in No. 88–5393.

John P. Meade, Washington, D.C., was on the brief for appellee Waterman S.S. Corp. in No. 88–5392.

Before WILLIAMS and SENTELLE, Circuit Judges, and ROBINSON, Senior Circuit Judge.

Opinion for the Court filed by Circuit Judge STEPHEN F. WILLIAMS.

STEPHEN F. WILLIAMS, Circuit Judge:

In 1982 the Maritime Subsidy Board issued a grant of authority to United States Lines to conduct around-the-world shipping service with unsubsidized ships. It did so in a manner that effectively denied U.S. Lines's competitors, including Waterman Steamship Corporation and Farrell Lines, Inc., an opportunity to contest the grant. Waterman and Farrell sued the Board in district court, which ordered a remand to the Board and thereby afforded them the missed opportunity. *Farrell Lines, Inc. v. Dole*, 619 F.Supp. 298 (D.D.C.1985). On the basis of the remand, and without regard to the substantive outcome, the court awarded them attorneys' fees under the Equal Access to Justice Act, 28 U.S.C.A. § 2412 (1989 Supp.). Because we conclude that a remand to the agency in these circumstances does not render Waterman and Farrell "prevailing parties" under EAJA, we reverse. We remand to the district court, however. U.S. Lines ultimately received *less broad* authority from the Board to conduct unsubsidized service than it had under the 1982 contract. Plaintiffs should have an opportunity to establish that the differential was caused by their litigative success and constitutes enough of a victory to qualify them as at least partially prevailing parties.

I

The Merchant Marine Act of 1936, 46 U.S.C.App. §§ 1101–1294 (1982), authorizes the Maritime Administration to subsidize the construction and operation of U.S.-flag vessels in foreign trade. 46 U.S.C.App. § 1173. The agency does so by giving an "operating-differential subsidy" to merchant marine operators, amounting to the difference between the domestic cost of operating ships on a given trade route and the cost for foreign competitors. See 46 U.S.C.App. § 1173(b).

In November 1980 U.S. Lines submitted an application for an operating subsidy contract for service on certain routes. In the application it also sought permission to undertake an unrestricted number of unsubsidized voyages. At the time, a set of regulations known as "General Order 80" required subsidized operators to show a "definite need" for unsubsidized service and gave competition a chance to be heard in opposition. See 46 CFR § 281.11 (1986), repealed, Non–Subsidized Voyages Restric-

tions Elimination, 51 Fed.Reg. 43003 (Nov. 28, 1986). The Maritime Subsidy Board, a branch of the Maritime Administration, stated in an interim opinion that the question of unsubsidized service by subsidized operators deserved further Board review, but that in the meantime U.S. Lines would have to seek authority for any such service under General Order 80. 619 F.Supp. at 301–02; see also *United States Lines, Inc.,* 5 MA 547, 564 (MSB 1981).

After the contract was approved, but before it was actually awarded, U.S. Lines sought to amend the contract to allow it to build 14 "Jumbo Econships" and operate them without subsidy on any legal trade route. In June 1982 the Board approved an amended contract, reducing the original subsidy, requiring construction of the Jumbos, and authorizing their use in unsubsidized around-the-world service. The Board acted without complying with General Order 80, and U.S. Lines's competitors learned of the amended contract through a Maritime Administration press release.

In 1984 Farrell and other competitors of U.S. Lines requested the Board to reopen the contract to inquire into the effects of the authorized Jumbo service on them, arguing that they had been lulled into believing no such service would be authorized without compliance with General Order 80. The Board denied the requests as untimely.

Four of U.S. Lines's competitors, including Farrell and Waterman, then sued the Board. The district court ruled that refusal to reopen the case in 1984 was an abuse of discretion because it was not until long after the 1982 order that the competitors learned of the full scope of the authority granted, evidently by observing U.S. Lines's actual conduct. See 619 F.Supp. at 306. It also held that the Board decision not to apply the terms of General Order 80 to the contract amendment was arbitrary,

capricious, and an abuse of discretion. 619 F.Supp. at 308. It remanded the case to the Board for it to entertain a new application by U.S. Lines for its Jumbo service, but neither enjoined the service in the meantime nor reinstated the original subsidy contract, as Waterman and Farrell had requested. *Id.* at 310–11.

While the remand was pending before the Board, Farrell and Waterman moved in the district court for an award of attorneys' fees under the Equal Access to Justice Act. The court awarded the fees, finding that Waterman and Farrell were each a "prevailing party" and that the government's litigating position was not "substantially justified." It also found that specializing in maritime law was a "special factor" justifying a deviation from the standard $75 per hour cap on attorneys' fees under EAJA, see 28 U.S.C. § 2412(d)(2)(A), and awarded fees for the entire amount of the lawsuit, with some minor reductions. This appeal followed.

II

■ Waterman and Farrell may be considered prevailing parties if they have "succeeded on 'any significant issue in litigation which achieve[d] some of the benefit the parties sought in bringing suit.'" *Texas State Teachers Ass'n v. Garland Indep. School Dist.,* —— U.S. ——, 109 S.Ct. 1486, 1493, 103 L.Ed.2d 866 (1989) (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983) (quoting *Nadeau v. Helgemoe,* 581 F.2d 275, 278–79 (1st Cir.1978))).[1] The plaintiff need not prevail on the "central issue" in the litigation, *Texas State Teachers,* but must secure some benefit greater than just a "favorable statement of the law in an otherwise unfavorable opinion." *Hewitt v. Helms,* 482 U.S. 755, 762, 107 S.Ct. 2672,

---

1. Although *Texas State Teachers* dealt with 42 U.S.C. § 1988 and not EAJA, the Court explained that it had granted certiorari in part because of "the importance of the definition of the term 'prevailing party' to the application of § 1988 *and other federal fee shifting statutes.*" See 109 S.Ct. at 1489 (emphasis added). This court has previously cited § 1988 cases in construing "prevailing party" under EAJA. See,

e.g., *National Coalition Against the Misuse of Pesticides v. Thomas,* 828 F.2d 42, 44 (D.C.Cir. 1987); *Massachusetts Fair Share v. Law Enforcement Assistance Admin.,* 776 F.2d 1066, 1067 (D.C.Cir.1985); see also *Brown v. Secretary of Health and Human Services,* 747 F.2d 878, 882 (3rd Cir.1984) (noting legislative history of EAJA calling for interpreting "prevailing party" consistently with other fee shifting statutes).

2676, 96 L.Ed.2d 654 (1987). We understand "benefit" to mean something more than an enhanced legal position in a proceeding that ultimately fails to supply any material relief.

In *Sullivan v. Hudson,* —— U.S. ——, 109 S.Ct. 2248, 104 L.Ed.2d 941 (1989), the Supreme Court considered whether EAJA allowed fees for the administrative phase of a claimant's quest for Social Security disability benefits. The claimant had lost at the administrative level, then secured a remand from the courts on the grounds that the agency had failed to follow its own substantive regulations, and finally prevailed. In finding the fees awardable, the Court was at pains to demonstrate that a Social Security claimant's status as a prevailing party was "often completely dependent on the successful completion of the remand proceedings before the Secretary." *Id.* 109 S.Ct. at 2255. In concluding that success was so dependent, the Court stated that where the remand did not "necessarily dictate the receipt of benefits, the claimant will not normally attain 'prevailing party' status ... until after the result of the administrative proceedings is known." *Id.* It analogized the case to *Hanrahan v. Hampton,* 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980), where it had held that securing reversal of a directed verdict was not sufficient benefit. The Court concluded, "We think it clear that under these principles a Social Security claimant would not, as a general matter, be a prevailing party within the meaning of the EAJA merely because a court had remanded the action to the agency for further proceedings." 109 S.Ct. at 2255. Finally it noted that "the vast majority" of the Courts of Appeals had reached this conclusion, citing *Paulson v. Bowen,* 836 F.2d 1249, 1252 (9th Cir.1988); *Brown v. Secretary of Health and Human Services,* 747 F.2d 878, 882 (3rd Cir.1984), and *Swedberg v. Bowen,* 804 F.2d 432, 434 (8th Cir.1986). Our own decision in *National Coalition Against the Misuse of Pesticides v. Thomas,* 828 F.2d 42 (D.C.Cir.1987), though involving the Environmental Protection Agency and a rulemaking, is to the same effect. See also *McGill v. Secretary of*

*Health and Human Services,* 712 F.2d 28, 31 (2d Cir.1983); *Von Luetzow v. Director, Office of Personnel Management,* 562 F.Supp. 684, 685–86 (D.D.C.1983); cf. *Brewer v. American Battle Monuments Comm'n,* 814 F.2d 1564, 1567 (Fed.Cir. 1987); H.R.Rep. No. 99–120(I), 99th Cong., 1st Sess., *reprinted in* 1985 U.S. Code Cong. & Admin. News 132, 148 (in explanation of 1985 reenactment and amendment of EAJA, committee states that "[t]he court will usually decline to make an award upon the remand decision because the remand order did not yet make the applicant a 'prevailing party' and therefore eligible under the EAJA").

Although the *Sullivan* decision is not a direct holding on the issue before us, the analysis appears a critical step in support of the Court's holding and we see no reason not to take it seriously. Both an agency and a trial court may make missteps along the way to a perfectly lawful conclusion, and parties certainly have the right to use reviewing courts to correct the missteps. From a party's viewpoint, however, correct procedures and use of correct substantive standards are largely (if not entirely) instruments to a desired end—a change in someone's primary conduct in the real world: relief from a restriction, grant of a benefit, imposition of a restriction on others, etc. To treat the ultimately fruitless quest for such relief as making the litigant a "prevailing party" assumes a peculiarly litigation-centered notion of human purpose. Moreover, award of EAJA fees for corrective efforts that yield no real-world benefit would reduce the normal deterrent to litigative nit-picking.

Repeat litigants might appear to be a special case, for even if improved procedures (for example) do not produce victory in the case at hand, they might enhance the probability of future victories. Conceivably Farrell and Waterman are in such a spot, although, for all we know, the likelihood may be as great that the district court's precedent will inconvenience them as often as it will advantage them. In any event, identifying such longterm winners appears to be so speculative a task as to

undermine any claim for a repeat-player exception.

Appellees suggest that they achieved more than a remand to the agency because they succeeded in shifting the burden of proof onto U.S. Lines to reapply for authorization to conduct unsubsidized service. While this doubtless increased the odds of their ultimately securing a real-world benefit (more curbs on U.S. Lines's competition), it provides no material difference between them and the remand-winning plaintiffs in *Sullivan* or the other Social Security cases, or in *National Coalition Against the Misuse of Pesticides*. The plaintiffs in those cases surely improved their chances—removing an error that at least arguably had caused their initial defeat before the agency. Yet they did not qualify as prevailing parties.

It is true that burden shifts, like other interim triumphs that are ultimately unproductive, literally satisfy an alternative formulation of the test, a requirement that a party secure a "material alteration of the legal relationship of the parties." *Texas State Teachers*, 109 S.Ct. at 1493. That formulation originated in *Hewitt v. Helms*, 482 U.S. 755, 761, 107 S.Ct. 2672, 2676, 96 L.Ed.2d 654 (1987), in which Justice Scalia sought to parse out more precisely what distinguishes a successful plaintiff in a declaratory judgment action (who would presumably be entitled to fees) from a plaintiff who wins no more than a "favorable statement of the law" en route to a loss on the merits. But *Hewitt* by no means suggests that interim victories on the way to ultimate defeat can be enough. The plaintiff (Helms) had secured a holding from the court of appeals that he had been denied due process.[2] 482 U.S. at 758, 760, 107 S.Ct. at 2674, 2675. In a broad sense the circuit court victory changed the relation between him and the government defendants, but that was not enough. Helms never obtained ultimate victory; the district court found damages barred by qualified immunity and Helms himself failed to pursue the only other remedy discussed,

expungement of the offending record. If merely securing a binding favorable statement of law were enough, Helms would have been a prevailing party.

Of course the terms of a remand may be such that a substantive victory will obviously follow. Thus in *Massachusetts Fair Share v. Law Enforcement Assistance Admin.*, 776 F.2d 1066 (D.C.Cir.1985), we rejected the idea that a remand to an agency precluded award of EAJA fees, where the winner "establish[ed] an entitlement to relief on the merits of a claim." *Id.* at 1068. The ruling anticipated the *Sullivan* Court's suggestion that remands that "necessarily dictate the receipt of benefits" qualify as adequate. 109 S.Ct. at 2255; cf. *Hanrahan v. Hampton*, 446 U.S. 754, 757–58, 100 S.Ct. 1987, 1989–90, 64 L.Ed.2d 670 (1980) (award *pendente lite* not appropriate unless party has already prevailed "on the merits of at least some of his claims").

Farrell suggests that where the plaintiff's main purpose is to secure a remand to correct, say, a want of reasoned decision-making, a remand must represent "some of the benefit ... sought" within the meaning of *Hensley* and *Texas State Teachers;* in some cases it may be *all* the benefit sought. To the extent Farrell argues that the concept of benefit should be proportional to what is sought, we disagree. That a party can only ask a court to compel agency reconsideration, or that it chooses to do so, should make no difference. It would seem absurd to grant fees to such a party, while denying them to a party that differs only in that it asked for a more complete victory (one that "necessarily dictate[s] the receipt of benefits," in *Sullivan*'s terms) and lost on that. Under our view both are equally ineligible for fees, as neither has garnered a benefit in the real world, outside the judicial/administrative process. Proportionality would come in only after an adequate victory is found and the court considers what share of the fees is reimbursable.

Finally, this court's decision in *Union of Concerned Scientists v. U.S. Nuclear Reg-*

---

2. Helms in fact secured two favorable due process holdings, but on one the defendants ob-

tained certiorari and reversal by the Supreme Court. *Id.* 482 U.S. at 758, 107 S.Ct. at 2674.

*ulatory Comm'n,* 840 F.2d 957 (D.C.Cir. 1988), compels no contrary conclusion. The court's brief opinion does not address *National Coalition* and presumably is not an effort by one panel to overrule another. See *Association of Civilian Technicians v. FLRA,* 756 F.2d 172, 176 & n. 15 (D.C.Cir. 1985) (panel bound under *stare decisis* to follow recent decision of another panel of this court unless decision is withdrawn by original panel or overruled *en banc*). Assuming the court regarded the Commission's action on remand as an adequate "benefit," as it may have, there is no conflict. Even if it were read as suggesting that a remand is in itself enough of a victory, the Supreme Court's later decision in *Sullivan,* and its firm endorsement of other circuit courts' contrary views, would require a re-examination and a return to *National Coalition.*

### III

■ On remand, the Board complied with the applicable procedures, and approved U.S. Lines's request for authority to conduct unsubsidized operations—a request which Waterman and Farrell tell us is more narrowly framed than the original grant, and represents a victory for them under EAJA. See *United States Lines, Inc.,* 23 Shipping Reg. (P & F) 794, No. S–774 (January 31, 1986). The district court made no such finding, relying exclusively on the remand itself. If indeed the narrowing is due to plaintiffs' litigation (either because it led the Board to cut down U.S. Lines's request, or because the remand induced U.S. Lines to trim its sails), this could represent the sort of benefit the appellees sought in bringing suit, the kind of "distinct external effect" on the real world that can render appellees partially prevailing parties. *Grano v. Barry,* 783 F.2d 1104, 1110 (D.C.Cir.1986) (injunction issued preventing the razing of building until after election); see also *Texas State Teachers,* 109 S.Ct. at 1494 (material alteration of school policy regarding the rights of teachers to communicate with each other on certain issues).

As the district court did not pass on the matter, the parties have not briefed the issue in any detail, and the 1982 amended contract was not made part of the record before us, we must remand to permit plaintiffs to show that there was such a victory, and that their litigative success caused it. See *Miller v. Staats,* 706 F.2d 336, 341 n. 32 (D.C.Cir.1983). If plaintiffs make the necessary showing, the court should then award a sum "to account for [plaintiffs'] limited success." *Texas State Teachers,* 109 S.Ct. at 1492 (citing *Hensley,* 461 U.S. at 437, 103 S.Ct. at 1941).

As appellees may not be found to have prevailed at all on remand, it would be premature for us to decide now whether the district court erred in departing from the $75 per hour cap, which is permissible only if the court finds it justified by a "special factor." 28 U.S.C.A. § 2412(d)(2)(A)(ii). We note that the two instances cited by *Pierce v. Underwood,* 487 U.S. 552, 108 S.Ct. 2541, 2554, 101 L.Ed.2d 490 (1988), as "identifiable practice specialt[ies]" justifying awards in excess of the cap, "patent law, or knowledge of foreign law or language," are both specialties requiring technical or other education *outside* the field of American law.

The judgment is

*Reversed and remanded.*