# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Decided September 2, 2016

No. 13-1068

SECURITYPOINT HOLDINGS, INC.,
PETITIONER

v.

TRANSPORTATION SECURITY ADMINISTRATION,
RESPONDENT

———

On Motion for Attorneys' Fees under
the Federal Equal Access to Justice Act

———

*Don J. Pelto*, *Bradley Graveline*, and *Laura M. Burson* were on the motion for attorneys' fees under the Federal Equal Access to Justice Act and the supplemental briefs for petitioner.

*Benjamin C. Mizer*, Principal Deputy Assistant Attorney General, and *Mark B. Stern* and *John S. Koppel*, Attorneys, U.S. Department of Justice, were on the response in opposition and the supplemental briefs for respondent.

Before: HENDERSON and SRINIVASAN, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* WILLIAMS.

WILLIAMS, *Senior Circuit Judge*: In *SecurityPoint Holdings, Inc. v. TSA*, 769 F.3d 1184 (D.C. Cir. 2014), we vacated an order of the Transportation Security Administration for want of reasoned decisionmaking and remanded the case for further proceedings. SecurityPoint now seeks an award of attorneys' fees as a prevailing party under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d)(1)(A) (2012). We conclude that SecurityPoint is a prevailing party and, in doing so, overrule *Waterman Steamship Corp. v. Maritime Subsidy Board*, 901 F.2d 1119 (D.C. Cir. 1990), as inconsistent with the Supreme Court's later decision in *Shalala v. Schaefer*, 509 U.S. 292 (1993).[1] We also conclude that the challenged order was not substantially justified. But because SecurityPoint achieved only a partial success in the litigation, we award only a portion of the fees sought.

\* \* \*

Our merits decision in *SecurityPoint Holdings* concerned an advertising program at airport security checkpoints in which participating airports, under a Memorandum of Understanding ("MOU") with TSA, would contract with private companies like SecurityPoint to obtain bins and other equipment for use at checkpoints. In exchange, the private companies would receive a portion of the revenue from advertisements displayed inside the checkpoint bins.

In 2012 TSA amended its template for such MOUs to include, among other things, a provision requiring airports to

---

[1] Because this part of our opinion rejects a prior statement of circuit precedent, it has been considered separately and approved by the full court. See *Irons v. Diamond*, 670 F.2d 265, 268 n.11 (D.C. Cir. 1981). (Chief Judge Garland did not participate in this matter.)

indemnify TSA from liability for intellectual property claims. SecurityPoint opposed these changes and requested that TSA cease and desist from implementing them. TSA refused, prompting SecurityPoint to seek review in this court. We granted SecurityPoint's petition for review, vacated the denial of the cease-and-desist request as arbitrary and capricious, and remanded the case to TSA. We didn't reach SecurityPoint's principal claim—that TSA had amended the MOU template in retaliation for SecurityPoint's patent infringement lawsuit against TSA—but held that "TSA's explanation for persisting in the change, in the face of SecurityPoint's arguments that the change was unnecessary and self-defeating for TSA, failed to satisfy the minimum requirements of reasoned decisionmaking." *SecurityPoint Holdings*, 769 F.3d at 1186.

After our decision issued, SecurityPoint filed a timely application for attorneys' fees under the EAJA. We deferred consideration of the application pending TSA's actions on remand. After the proceedings on remand were completed, the parties submitted additional briefs on the fee motion and, at our request, filed briefs discussing whether the *Waterman* case should be overruled.[2]

\* \* \*

The EAJA directs a court to award "fees and other expenses" to a "prevailing party" in a civil action against the United States unless the government's position was "substantially justified" or "special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). "[F]ees and other

---

[2] In December 2015 SecurityPoint filed a new petition for review in this court challenging TSA's response on remand. *SecurityPoint Holdings, Inc. v. TSA*, 15-1449 (D.C. Cir., Dec. 14, 2015).

expenses" include "reasonable attorney fees." *Id.* § 2412(d)(2)(A). A fee application must be filed within 30 days from entry of final judgment, *id.* § 2412(d)(1)(B), defined under the EAJA as "a judgment that is final and not appealable," *id.* § 2412(d)(2)(G). (A final judgment is not appealable within the meaning of this provision if the time for appeal has expired without one being filed. *Melkonyan v. Sullivan*, 501 U.S. 89, 96 (1991); see also *Al-Harbi v. INS*, 284 F.3d 1080, 1083-84 (9th Cir. 2002) (considering the opportunity to apply for certiorari).)

In determining whether a litigant is a prevailing party, we apply a three-part test: "(1) there must be a court-ordered change in the legal relationship of the parties; (2) the judgment must be in favor of the party seeking the fees; and (3) the judicial pronouncement must be accompanied by judicial relief." *Initiative & Referendum Inst. v. USPS*, 794 F.3d 21, 23-24 (D.C. Cir. 2015) (citation and internal quotation marks omitted). Our 2014 decision clearly satisfies the second and third requirements. The question is whether the decision effected "a court-ordered change in the legal relationship of the parties."

Relying principally on *Waterman*, TSA argues that SecurityPoint is not a prevailing party because it achieved a "purely procedural victory." TSA Original Br. 3. That appears to be a correct reading of *Waterman*. There the Maritime Subsidy Board granted U.S. Lines authority to conduct unsubsidized around-the-world shipping service without giving competing companies an opportunity to contest the grant. The competitors sued the Board in district court, which found an abuse of discretion in the Board's refusal to entertain their objections; the district court remanded the case and thereby afforded the competitors the missed opportunity to contest the grant. While the remand was pending before the Board, the district court awarded the competitors

attorneys' fees under the EAJA.  This court reversed, holding that such a procedural victory didn't make the plaintiffs prevailing parties.  We reasoned that "[f]rom a party's viewpoint . . . correct procedures and use of correct substantive standards are largely (if not entirely) instruments to a desired end—a change in someone's primary conduct in the real world: relief from a restriction, grant of a benefit, imposition of a restriction on others, etc."  901 F.2d at 1122.  The remand in *Waterman* wasn't enough, we said, because it didn't confer on the plaintiffs any "benefit in the real world, outside the judicial/administrative process."  *Id*. at 1123.  Rather, the remand merely "increased the odds" of ultimately obtaining such a benefit, which we saw as insufficient.  *Id*.

In reaching this result, *Waterman* relied a good deal on the Supreme Court's decision in *Sullivan v. Hudson*, 490 U.S. 877 (1989).  There the Court considered whether a Social Security claimant was entitled to fees incurred during the administrative phase of the proceedings.  The claimant had lost at the administrative level, secured a remand from the courts on the ground that the agency had failed to follow its own regulations, and finally prevailed on remand.  In holding that the claimant was entitled to recover fees for the proceedings on remand, the Court observed that where the remand didn't "necessarily dictate the receipt of benefits, the claimant will not normally attain 'prevailing party' status . . . until after the result of the administrative proceedings is known."  *Id*. at 886.  Further: "We think it clear that . . . a Social Security claimant would not, as a general matter, be a prevailing party within the meaning of the EAJA merely because a court had remanded the action to the agency for further proceedings."  *Id*. at 887.  *Waterman* invoked both of these passages, saying that "[a]lthough the *Sullivan* decision is not a direct holding on the issue before us, the analysis appears a critical step in support of the Court's holding and

we see no reason not to take it seriously." *Waterman*, 901 F.2d at 1122.

In *Shalala v. Schaefer*, 509 U.S. 292 (1993), however, the Court made clear that *Hudson* turned on the fact that the district court had retained jurisdiction during the remand to the agency. See *id*. at 299, quoting the penultimate sentence of *Hudson*. Schaefer had appealed from a denial of Social Security benefits and secured a remand based on agency error. After he was granted benefits on remand, he sought attorneys' fees as a prevailing party. The issue for the Court was whether his application was timely under the EAJA's 30-day clock. The answer, the Court explained, turned on a distinction between a "sentence-four" remand and a "sentence-six" remand under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g). (The labels refer to the sentences of § 405(g).) The crucial difference is that a "sentence-four" remand is accompanied by immediate entry of judgment, whereas a "sentence-six" remand entails the court's retaining jurisdiction and entering judgment only after completion of the remand and post-remand proceedings. See *Schaefer*, 509 U.S. at 297. The Court held that a sentence-four remand order was a "final judgment" triggering the 30-day clock to seek fees. (Curiously, *Hudson* itself was a sentence-four remand *with* retention of jurisdiction, which was improper under the Court's reading of § 405(g). *Id*. at 299-300.)

Critically, the Court rejected the argument that a remand order could not be considered a final judgment "since a Social Security claimant does not 'prevail' until he is awarded Social Security benefits." *Id*. at 300. To the contrary, the Court said, by "[o]btaining a sentence-four judgment reversing the Secretary's denial of benefits," the plaintiff achieved "some of the benefit . . . sought in bringing suit" and thereby obtained prevailing-party status. *Id*. at 302 (citation and internal quotation marks omitted). According to the *Schaefer* Court,

*Hudson*'s "dicta" to the contrary—dicta on which *Waterman* relied—"simply failed to recognize the distinction between a sentence-four remand, which terminates the litigation with victory for the plaintiff, and a sentence-six remand, which does not." *Id*. at 301. (The Court was plainly not using "litigation" in one of the colloquial senses of the term, where it encompasses whatever cases may be filed in resolution of the parties' overall dispute.)

*Schaefer* is fatal to *Waterman*'s idea that to "prevail" a party must obtain a change in the opposing party's "primary conduct," such as, in the agency context, "relief from a restriction, grant of a benefit, imposition of a restriction on others, etc." 901 F.2d at 1122. *Schaefer* itself involved a remand based on agency error, and the Court deemed it sufficient, expressing no view whatever as to the probability (much less a certainty) that it would lead to a grant of the benefit applied for. Just like the sentence-four remand in *Schaefer*, our 2014 decision in *SecurityPoint* "terminate[d] the litigation with victory for the [petitioner]," *Schaefer*, 509 U.S. at 301: we granted SecurityPoint's petition for review, set aside the challenged order as arbitrary and capricious, and remanded the case to the agency for further review (without retaining jurisdiction). See CIRCUIT RULE 41(b) (drawing a distinction between, on the one hand, remanding *a record* and retaining jurisdiction and, on the other, remanding *a case* and terminating the action). Thus SecurityPoint achieved "some of the benefit . . . sought in bringing suit," which is all that's required. *Schaefer*, 509 U.S. at 302 (citation and internal quotation marks omitted). By vacating the challenged order and placing the agency under an obligation to consider the cease-and-desist request afresh and supply new or better reasons should it decide to deny the request again, our decision effectuated "a court-ordered change in the legal relationship of the parties." *Initiative & Referendum Inst.*, 794 F.3d at 23.

Though *Schaefer* is enough to require overruling of *Waterman*, another subsequent decision, *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human Res.*, 532 U.S. 598 (2001), made clear that *Waterman*'s attempted focus on impact in "the real world" was no longer sustainable. Rejecting the so-called "catalyst theory," *Buckhannon* held that a plaintiff doesn't become "prevailing" merely because "the lawsuit brought about a voluntary change in the defendant's conduct." *Id*. at 600. Applied in a court following *Waterman*, *Buckhannon* would appear to block an award of fees even if a judicial remand on a procedural point led to an agency change completely meeting the plaintiffs' substantive concerns. Cf. *Initiative & Referendum Inst.*, 794 F.3d at 23-25 (awarding fees where the terms of the remand made the plaintiffs' substantive victory inevitable).

TSA contends that "[t]he distinction *Schaefer* drew in the Social Security context . . . makes little sense in the broader framework of APA review" because "it would lead to the anomalous result that someone who secured a remand without retention of jurisdiction would be a 'prevailing party,' while someone who secured a remand with retention of jurisdiction would not." TSA Second Suppl. Br. 6. Apart from being precisely the line drawn in *Schaefer*, the distinction is in no way "anomalous." When a court retains jurisdiction, the civil action remains ongoing, and any fee motion must await final judgment. In such a case, the remand order is only an interim victory; final judgment will not be entered until proceedings on remand conclude, and the determination of prevailing-party status properly awaits the sequel (e.g., an outcome at the agency favorable to the plaintiff, as in *Hudson*, 490 U.S. at 881-82, or continued dispute in court). By contrast, when a court remands a case based on agency error *without* retaining jurisdiction, the case is terminated and the petitioner becomes a prevailing party without regard to the outcome on remand (which can be challenged by way of a new petition, as

happened here). Cf. *Former Employees of Motorola Ceramic Products v. United States*, 336 F.3d 1360, 1366 (Fed. Cir. 2003).

TSA tries to analogize the remand in this case to interim victories within the federal court system that are insufficient for prevailing-party status, such as withstanding a motion to dismiss or obtaining "an interlocutory ruling that reverses [a] dismissal for failure to state a claim." TSA Second Suppl. Br. 6. But the analogy is inapt. When a district court denies a motion to dismiss—or when an appellate court reverses a grant of such a motion—the plaintiff has won nothing but an opportunity to continue pressing his claims in the case originally filed. Such a ruling doesn't compel the defendant to alter its conduct one whit; it merely means that an attempt to throw the case out was unsuccessful. And, as in cases where the court retains jurisdiction, ascertaining the prevailing party must await further developments in the case.

Finally, TSA cites *Sole v. Wyner*, 551 U.S. 74 (2007), in which the Supreme Court held that a plaintiff who obtained a preliminary injunction but was ultimately denied any permanent relief was not a prevailing party. See *id.* at 77-78. According to TSA, "if the preliminary injunction obtained in *Sole* . . . was insufficient to make plaintiff there a prevailing party, then a remand for reasoned decisionmaking by an agency cannot be sufficient, by itself, to make petitioner a prevailing party where the agency may ultimately adhere to its initial determination." TSA Second Suppl. Br. 8. A fallacy in that reasoning is, again, that the preliminary injunction in *Sole* was but an interim victory en route to final judgment (which was against the fee applicant), whereas the vacatur and remand in this case terminated the litigation in SecurityPoint's favor. See *Sole*, 551 U.S. at 84 ("express[ing] no view on whether, in the absence of a final decision on the merits of a claim for permanent injunctive relief, success in gaining a

preliminary injunction may sometimes warrant an award of counsel fees"). Moreover, fee cases involving preliminary injunctive relief may be sui generis, as reflected by the complex array of decisions on that subject. See, e.g., *Select Milk Producers, Inc. v. Johanns*, 400 F.3d 939 (D.C. Cir. 2005) (awarding fees for securing a preliminary injunction where a subsequent change in regulation rendered the case moot); *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962 (D.C. Cir. 2004) (awarding fees for securing an administrative remand to correct procedural errors along with a permanent injunction barring the government from transferring certain property in the meantime); *Thomas v. National Science Foundation*, 330 F.3d 486 (D.C. Cir. 2003) (reversing a fee award where the plaintiffs had secured a preliminary injunction freezing certain contested funds but a subsequent law rendered the case moot); *Grano v. Barry*, 783 F.2d 1104 (D.C. Cir. 1986) (holding that the plaintiffs, who sought to preserve a historic tavern, were prevailing parties for securing a preliminary injunction temporarily barring the tavern's demolition, even though the tavern was eventually razed as a result of subsequent litigation).

We thus overrule *Waterman* and hold, consistent with *Schaefer*, that a petitioner who secures a remand terminating the case and requiring further administrative proceedings in light of agency error is a prevailing party without regard to the outcome on remand. Our sister circuits have reached the same conclusion in the immigration context. See *Johnson v. Gonzales*, 416 F.3d 205, 209-10 (3d Cir. 2005); *Muhur v. Ashcroft*, 382 F.3d 653, 654-55 (7th Cir. 2004); *Rueda-Menicucci v. INS*, 132 F.3d 493, 495 (9th Cir. 1997).

\* \* \*

We next consider whether the agency's position was "substantially justified," which would preclude a fee award.

28 U.S.C. § 2412(d)(1)(A). A position is substantially justified "if a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact." *Pierce v. Underwood*, 487 U.S. 552, 566 n.2 (1988). See also *id*. at 565. The government bears the burden of establishing substantial justification. See *Halverson v. Slater*, 206 F.3d 1205, 1208 (D.C. Cir. 2000). But even a finding that an agency's action was arbitrary and capricious doesn't preclude a decision that the action was substantially justified. See *FEC v. Rose*, 806 F.2d 1081, 1087-90 (D.C. Cir. 1986).

TSA has not met its burden of demonstrating that its position was substantially justified. In urging TSA to rescind the revisions to the MOU template, SecurityPoint advanced several serious points: It argued that the indemnification demand was a "classic 'poison pill'" because airports would not and could not agree to it. It gave reason to believe that TSA's revisions would not only disable SecurityPoint's business but also damage TSA itself by shifting equipment costs to the agency. Finally, it suggested that an indemnification commitment was unnecessary because TSA had an implied license to use the relevant intellectual property at all airports that had contracts with SecurityPoint. TSA's denial letter, penned by its Chief Counsel, was wholly unresponsive to these contentions. As we said in 2014, the letter offered "no indication that . . . anyone at TSA even considered the potential harms to . . . TSA[] from insistence on the new provisions" and no engagement with the argument that the agency already enjoyed an implied license. *SecurityPoint Holdings*, 769 F.3d at 1188. This indifference seems sufficiently beyond ordinary "arbitrary and capricious" agency action to qualify as lacking substantial justification.

TSA also says that SecurityPoint's "principal argument, both before the agency and in litigation, was that TSA had changed the terms of the MOU to retaliate against

SecurityPoint"—an argument that TSA "emphatically rejected" and that the court didn't reach. TSA Original Br. 8-10. That's true but ultimately irrelevant, because "[t]he government . . . must demonstrate the reasonableness not only of its litigation position, but also of the *agency's* actions." *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 967 (D.C. Cir. 2004) (emphasis in original). See also *Halverson*, 206 F.3d at 1208; 28 U.S.C. § 2412(d)(2)(D) (providing that "position of the United States" refers to both the position taken in the civil action and the agency's act or failure to act on which the civil action is based). The court's not reaching the retaliation argument does nothing to help TSA carry its burden of showing that the underlying action—the failure to address critical arguments made by SecurityPoint—was substantially justified.

\* \* \*

Finally, we must determine the amount of fees to which SecurityPoint is entitled. SecurityPoint seeks to recover $108,393.48 for 564.2 hours of work at a rate of approximately $190 per hour. TSA doesn't contest its adversary's billing rates but argues that SecurityPoint achieved only a limited victory in this litigation and that the fee award should be reduced accordingly.

The Supreme Court has held that "the extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees." *Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983). A first cut in measuring that extent depends, where there are multiple claims for relief, on whether the successful claims are "related" to the unsuccessful ones. Hours spent on unsuccessful claims that are "distinct in all respects from" the successful ones should be excised. *Id.* By contrast, where successful and unsuccessful claims are related, "a plaintiff who has won

substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised." *Id.*

Here SecurityPoint's principal argument was that TSA adopted the MOU revisions in retaliation for a prior patent suit, and that such retaliatory action was both arbitrary and capricious and contrary to the First Amendment. SecurityPoint also argued (albeit cursorily) that the denial of its cease-and-desist request was arbitrary and capricious for want of reasoned decisionmaking. The latter argument, the only one we reached, was successful. Much argument was also devoted to motions by both parties to supplement the record with various documents bearing on the retaliation claims; we denied those motions as moot.

We believe that SecurityPoint's petition for review presented only one claim for relief—that TSA's denial of the cease-and-desist request was unlawful and must be set aside. Its assertion of several distinct *grounds* does not create multiple claims. See *Am. Petroleum Inst. v. EPA*, 72 F.3d 907, 911-12 (D.C. Cir. 1996). But even if we treated the various grounds as separate claims, they are related in the sense meant by *Hensley*. The absence of any affirmative explanation for TSA's action buttressed the claim of retaliation. And the efforts to supplement the record were clearly related to SecurityPoint's underlying challenges, as the goal was to bring to the court's attention evidence bearing on TSA's alleged retaliatory intent. This is a case where it is "difficult to divide the hours expended on a claim-by-claim basis," so that the litigation should be viewed as a whole. *Hensley*, 461 U.S. at 435.

Even when we are satisfied either that SecurityPoint raised a single claim or that it raised multiple related claims, *Hensley* tells us to assess the extent of its success and to

"award only that amount of fees that is reasonable in relation to the results obtained." 461 U.S. at 440. See also *Goos v. Nat'l Ass'n of Realtors*, 68 F.3d 1380, 1384 (D.C. Cir. 1995). In making the assessment we disregard the outcome of the remand to TSA; not only is it under review, but under *Schaefer* it is SecurityPoint's success in the civil action before us that we are evaluating. To a degree, the results fall short of matching SecurityPoint's efforts. Had we reached its retaliation theory, to which it devoted much of its briefing, we might well have responded favorably to its suggestion that we order TSA to withdraw the offending changes to the MOU template (though subject, presumably, to ultimate restoration on an adequate record). See SecurityPoint Merits Reply Br. 32. Nonetheless, SecurityPoint won a significant victory—an opinion vacating the challenged order on the ground that the agency had failed to meet the minimum requirements of reasoned decisionmaking. Under these circumstances, we think a reduction of 20% is appropriate.

Finally, TSA argues that SecurityPoint's billing records are inadequate in certain respects and that too many hours were spent on various tasks. Upon review of SecurityPoint's contemporaneous records, we conclude that while some entries are less than perfect, the time spent on the various tasks was reasonable and a further reduction is unwarranted. Compare *Role Models*, 353 F.3d at 968-74 (D.C. Cir. 2004).

\* \* \*

We grant in part SecurityPoint's application for attorneys' fees and enter an award in the amount of $86,714.78.

*So ordered*.