# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued October 11, 2016        Decided December 16, 2016

No. 16-5037

ERIK O. AUTOR, ET AL.,
APPELLANTS

v.

PENNY SUE PRITZKER, IN HER OFFICIAL CAPACITY AS
SECRETARY OF COMMERCE, ET AL.,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:11-cv-01593)

———

*E. Brantley Webb* argued the cause for appellants. With her on the brief was *Charles A. Rothfeld*.

*Sydney A. Foster*, Attorney, U.S. Department of Justice, argued the cause for appellees. With her on the brief were *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General, and *Michael S. Raab* and *Charles W. Scarborough*, Attorneys.

Before: HENDERSON and ROGERS, *Circuit Judges*, and GINSBURG, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*: This appeal from the denial of attorneys' fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412, presents the question whether appellants' prior appeal effectively secured them prevailing party status.

Appellants filed suit challenging the federal policy barring federally registered lobbyists from serving on the Industry Trade Advisory Committees. *See* Request for Nominations for the Industry Trade Advisory Comms., 75 Fed. Reg. 24,584, 24,585 (May 5, 2010); Pres. Mem. on Lobbyists on Agency Bds. & Comm'ns, 75 Fed. Reg. 35,955, 35,955 (June 23, 2010) (hereinafter "the lobbyist ban"). The district court dismissed the complaint for failure to state a claim. This court reversed, rejecting two of the government's defenses, and remanded the case for the district court to determine whether the government's interest in imposing the lobbyist ban "outweighs any impingement on Appellants' constitutional rights." *Autor v. Pritzker*, 740 F.3d 176, 178 (D.C. Cir. 2014) ("*Autor I*"). In so doing, the court noted two considerations for the district court to address on remand. *Id.* at 184. Appellants contend the court thereby made clear that they would necessarily prevail on remand and therefore they were entitled to attorneys' fees. Appellants have overread *Autor I*, because the court acknowledged that on remand dismissal might still be appropriate depending on the district court's disposition of the government's remaining defense. *See id.* Accordingly, we affirm.

**I.**

Appellants are federally registered lobbyists who sued the Secretary of Commerce and United States Trade Representative on the grounds that the lobbyist ban violated their rights under

the First and Fifth Amendments to the Constitution. Their complaint alleged that the lobbyist ban "attaches an unconstitutional condition on the exercise of the First Amendment right to petition [the government]," Compl. ¶ 49, and "draws an unconstitutional distinction between those who exercise their right to petition the government and those who do not," *id*. at ¶ 53. The district court granted the government's motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), and appellants appealed.

This court held that the complaint stated "a viable First Amendment unconstitutional conditions claim," *Autor I*, 740 F.3d at 183, and a plausible Fifth Amendment equal protection claim, *id*. at 184. The court was unpersuaded by the government's defenses that its freedom to choose its advisors under *Minnesota State Board for Community Colleges v. Knight*, 465 U.S. 271 (1984), foreclosed appellants' unconstitutional conditions claim or that the lobbyist ban did not impose an unconstitutional burden on appellants' First Amendment right to petition under *Lyng v. International Union*, 485 U.S. 360 (1988). *Id.* at 181, 183. The court recognized, however, that "[t]he Supreme Court has long sanctioned government burdens on public employees' exercise of constitutional rights," *id.* at 183, and that "the government's interest in selecting its advisors . . . may justify similar restrictions on individual rights," *id.* at 183-84. The court remanded the case to the district court to develop a factual record and undertake the balancing of interests analysis set forth in *Pickering v. Board of Education*, 391 U.S. 563 (1968). *Id.* at 184. In other words, inasmuch as the court was required at that stage of the proceedings to treat the allegations of the complaint as true, *see id.* at 179, 183; *Atherton v. D.C. Office of the Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009), dismissal might still prove appropriate on remand. The court stated that on remand the district court should inquire into the government's

justification for banning federally registered lobbyists, such as appellants, while allowing other corporate employees representing the same companies to serve on the Industry Trade Advisory Committees, and how banning lobbyists from committees otherwise featuring corporate representatives "protects the 'voices of ordinary Americans.'" *Autor I*, 740 F.3d at 184 (quoting Pres. Mem., 75 Fed. Reg. at 35,955).

In the district court, the parties filed a joint motion for an extension of time and two months later informed the district court of their intention to settle the case or file a schedule for further proceedings. In August 2014, the Office of Management and Budget revised the lobbyist ban to apply only to lobbyists who serve on advisory committees in an individual capacity. *See* Rev. Guidance on Appointment of Lobbyists to Fed. Advisory Comms., Bds., & Comm'ns, 79 Fed. Reg. 47,482, 47,482 (Aug. 13, 2014). In light of this "policy clarification," the Department of Commerce issued an amended "Request for Nominations for the Industry Trade Advisory Committees." 79 Fed. Reg. 51,552, 51,552 (Aug. 29, 2014). On September 3, 2014, the parties filed a stipulation to dismiss the case, with appellants stating their intention to file an application for attorneys' fees.

The district court denied appellants' motion for attorneys' fees under the EAJA on the ground that the remand in *Autor I* did not ensure appellants would enjoy a substantive victory, and thus they were not "prevailing parties" under *Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources*, 532 U.S. 598 (2001). *Autor v. Blank*, 161 F. Supp. 3d 111, 113, 117 (D.D.C. 2016). Appellants appeal, and our review is *de novo*. *Initiative & Referendum Inst. v. U.S. Postal Serv.*, 794 F.3d 21, 23 (D.C. Cir. 2015).

5

## II.

The EAJA provides that "fees and other expenses" shall be awarded to the "prevailing party" in a civil suit brought against the United States "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). These "fees" include "reasonable attorney fees." *Id*. at § 2412(d)(2)(A). In *Buckhannon*, 532 U.S. 598, the Supreme Court interpreted "prevailing party" consistently across multiple statutes, holding that to be eligible for an award of attorneys' fees in derogation of the "American Rule," *id.* at 602, there must be a "judicially sanctioned change in the legal relationship of the parties," *id*. at 605. The Court rejected the "'catalyst theory,' which posits that a plaintiff is a 'prevailing party' if [the plaintiff] achieves the desired result because the lawsuit brought about a voluntary change in the defendant's conduct." *Id.* at 601. This court has held that "*Buckhannon* applies to the definition of 'prevailing party' under the EAJA." *Thomas v. Nat'l Sci. Found.*, 330 F.3d 486, 492 n.1 (D.C. Cir. 2003). It also has adopted a three-part test for determining whether a party has prevailed under *Buckhannon*: "(1) there must be a court-ordered change in the legal relationship of the parties; (2) the judgment must be in favor of the party seeking the fees; and (3) the judicial pronouncement must be accompanied by judicial relief." *Turner v. Nat'l Transp. Safety Bd.*, 608 F.3d 12, 15 (D.C. Cir. 2010) (quoting *District of Columbia v. Straus*, 590 F.3d 898, 901 (D.C. Cir. 2010)) (internal quotation marks omitted). Appellants do not meet this test.

Appellants seek prevailing party status on the basis that *Autor I* structured the remand in a way that invalidation of the lobbyist ban was inevitable. Specifically, they point to this court's "dispositive questions" for which, they maintain, "the

government had, and has, no satisfactory answers." Appellants' Br. 12.  And they maintain that interpreting *Buckhannon* not to preclude the award of fees in their circumstances is necessary to avoid government manipulation of the *Buckhannon* rule. Neither contention is persuasive.

Appellants rely on *Waterman Steamship Corp. v. Maritime Subsidy Board*, 901 F.2d 1119 (D.C. Cir. 1990), where the court concluded  that prevailing parties are those who succeed on any significant issue that "achieve[d] some of the benefit the parties sought in bringing suit."     *Id.* at 1121 (quoting *Tex. State Teachers Ass'n v. Garland Indep. School Dist.*, 489 U.S. 782, 791 (1989)) (alteration in original).  Although recognizing that a "plaintiff need not prevail on the 'central issue' in the litigation," *id*. (quoting *Tex. State Teachers Ass'n*, 489 U.S. at 791), the court interpreted "'benefit' to mean something more than an enhanced legal position in a proceeding that ultimately fails to supply any material relief," *id*. at 1122.  A remand to an agency or trial court for further proceedings generally will not justify an award of attorneys' fees.  *Id.* at 1122-23.  *But see SecurityPoint Holdings, Inc. v. Transp. Sec. Admin.*, 836 F.3d 32 (D.C. Cir. 2016).  The court acknowledged, however, that attorneys' fees may be awarded where a  remand is structured "such that a substantive victory will obviously follow." *Id.* at 1123. *Waterman* preceded *Buckhannon*, but this court has since reaffirmed that such a structured remand constitutes a "'court-ordered change in the legal relationship' between the parties" that can confer "prevailing party" status under *Buckhannon*. *Initiative & Referendum Inst.*, 794 F.3d at 24 (quoting *Buckhannon*, 532 U.S. at 604).

In appellants' view, *Autor I* involved the type of structured remand that *Initiative & Referendum Institute* held satisfied the "prevailing party" test.  *Id.* at 25.  "Either the [government] would amend its regulation, or the District Court would order it

to do so." *Id*. But the remand discussed in *Initiative & Referendum Institute* came after the court had held the challenged regulation was unconstitutional. *Id.* at 22-23 (citing *Initiative & Referendum Inst. v. U.S. Postal Serv.*, 417 F.3d 1299, 1318 (D.C. Cir. 2005)). Appellants' circumstances are not similar. Although *Autor I* narrowed the grounds on which the government could defend the lobbyist ban, it did not foreclose the possibility that the government could prevail on the merits. The court did not reach the merits of the government's position "that the lobbyist ban cannot be thought to constitute significant pressure to give up one's status as a paid registered lobbyist," stating that doing so would be "premature" given that, at this stage of the case, the court must assume the allegations of the complaint are true. *Autor I*, 740 F.3d at 183 (internal quotation marks omitted). And the court declined to undertake the *Pickering* analysis of appellants' First and Fifth Amendment challenges because the issues were "unbriefed." *Id.* at 184. In these circumstances, appellants' suggestion that the government would have been unable to present a meritorious defense on remand is mere speculation.

Regarding manipulation of the *Buckhannon* rule, appellants contend that they and others in their position should be treated as prevailing parties because otherwise the government can choose to moot a case just before judgment in order to avoid having to pay attorneys' fees. In *Buckhannon*, the Court expressed skepticism over tactical mooting fears, noting the absence of empirical evidence and suggesting the "catalyst theory" could just as well prolong unnecessary litigation by deterring a defendant from voluntarily changing its conduct. 532 U.S. at 608. "Given the clear meaning of 'prevailing party' in the fee-shifting statutes," however, the Court concluded that it "need not determine which way these various policy arguments cut." *Id.* at 610. Appellants suggest that the test in *Buckhannon* was shaped by its facts, where the defendants

agreed to stay the challenged directive before any judicial ruling on the merits, and that the Supreme Court's reasoning supports awarding attorneys' fees to plaintiffs seeking equitable relief when "the government repeals the challenged law after a court has made rulings related to the illegality of that law." Appellants' Br. 21. Further, in appellants' view, forcing plaintiffs to continue litigating simply to qualify for attorneys' fees would undermine the judicial policy favoring settlements.

Here, appellants rely on *Palmetto Properties, Inc. v. County of DuPage*, 375 F.3d 542 (7th Cir. 2004). In that case, the plaintiffs' claim became moot when the defendants amended the challenged regulation following the district court's grant of partial summary judgment to the plaintiffs. *Id.* at 549-50. The Seventh Circuit reasoned that awarding attorneys' fees in this circumstance was consistent with *Buckhannon* because the defendants' conduct occurred after a judicial determination in the plaintiffs' favor on the substantive merits of their claim, and the government's subsequent "action is most persuasively construed as involuntary — indeed exhibiting judicial imprimatur." *Id.* at 550. Denying attorneys' fees in such circumstances "would contradict *Buckhannon*'s logic, create an inequitable result, and promote inefficiency because plaintiffs who have succeeded on the merits would be encouraged to rush forward with potentially unnecessary litigation, solely to preserve their entitlement to fees." *Id*. The court acknowledged, however, that the government was "free to moot the case *before* the summary-judgment ruling, in which case the action would have been voluntary." *Id*.

*Palmetto* is analogous to *Initiative & Referendum Institute*, 794 F.3d at 24-25; both cases became moot after a judicial determination for the plaintiffs on the merits of their claims but before the district court had entered a final judgment or order. Appellants maintain their case is similar because all that was

left to be done was for the district court to enter a final order memorializing "the clear thrust of" the remand in *Autor I*. Appellants' Br. 23-24. Yet appellants' case does not fall within this particular "special category of case that is vulnerable to tactical mooting just before judgment." Appellants' Br. 20. No judicial determination had been made on the merits of appellants' constitutional challenges before the government revised the lobbyist ban. Appellants effectively ask this court to determine both the substantive merits of their challenges in the first instance and inquire whether the government's revision to the lobbyist ban was involuntary. This is the type of "second major litigation" that courts have been cautioned to avoid in adjudicating requests for attorneys' fees. *Buckhannon*, 532 U.S. at 609 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)).

To the extent appellants take issue with the broader impact of *Buckhannon* on public interest litigation, the Supreme Court viewed this type of argument for awarding attorneys' fees as falling within the scope of the "catalyst theory" and, in broadly rejecting that theory, rejected appellants' concerns as well. *See id.* at 607-09. Although the plaintiffs in *Buckhannon* had not secured interlocutory relief on appeal before their challenge was mooted, as appellants did in *Autor I*, the Supreme Court reaffirmed that "an interlocutory ruling that reverses a dismissal for failure to state a claim 'is not the stuff of which legal victories are made.'" *Id.* at 605 (quoting *Hewitt v. Helms*, 482 U.S. 755, 760 (1987)). Allowing a plaintiff to "recover attorney's fees if it established that the complaint had sufficient merit to withstand a motion to dismiss for lack of jurisdiction or failure to state a claim on which relief may be granted" was a "limited form of the catalyst theory." *Id.* (internal quotation marks omitted).

This court recently stated as much in *SecurityPoint Holdings, Inc.*, 836 F.3d 32, in overruling *Waterman*'s

requirement that "to 'prevail' a party must obtain a change in the opposing party's 'primary conduct,' such as, in the agency context, 'relief from a restriction, grant of a benefit, imposition of a restriction on others, etc.'" *SecurityPoint*, 836 F.3d at 37 (quoting *Waterman*, 901 F.2d at 1122); *see id.* 35 n.1. The court concluded that *Waterman* was inconsistent with *Shalala v. Schaefer*, 509 U.S. 292 (1993), which held that a remand by the district court to an agency could constitute a "final judgment" for purposes of a plaintiff's "prevailing party" status if the remand terminated the district court's jurisdiction over the case. *Id.* at 37. This type of remand was distinguishable from "interim victories within the federal court system that are insufficient for prevailing-party status, such as withstanding a motion to dismiss or obtaining an interlocutory ruling that reverses a dismissal for failure to state a claim." *Id.* at 38 (internal quotation marks and brackets omitted). In the former circumstance, the remand alone is sufficient to confer prevailing party status because the district court had entered a favorable final judgment even though the plaintiff may not ultimately succeed before the agency on remand. *Id.* By contrast, a plaintiff who obtains the denial of a motion to dismiss has won only the "opportunity to continue pressing his claims in the case originally filed. Such a ruling doesn't compel the defendant to alter its conduct one whit; it merely means that an attempt to throw the case out was unsuccessful." *Id.* "[A]scertaining the prevailing party must await further developments in the case." *Id.* at 39.

Appellants' circumstances do not warrant a different result. Although they "achieved [a] desired result," *Buckhannon*, 532 U.S. at 600, their success in *Autor I* "lacks the necessary judicial *imprimatur*" on the merits of their challenge to the lobbyist ban to secure the status of "prevailing party," *id.* at 605. Because appellants are not "prevailing parties" under the EAJA, it is unnecessary to address whether the government's position was

substantially justified.

Accordingly, we affirm.